STATE FARM FIRE AND CASUALTY COMPANY, Plaintiff,

v.

VALSPAR CORPORATION, INC., a Delaware Corporation; and Bonnie Estes, an individual, Defendants.

No. CIV. 09–5056–JLV.

United States District Court, D. South Dakota, Western Division.

Sept. 24, 2010.

Sander J. Morehead, Timothy R. Shattuck, Woods, Fuller, Shultz & Smith, P.C., Sioux Falls, SD, for Plaintiff.

Gary D. Jensen, Travis B. Jones, Beardsley, Jensen & Von Wald, Prof. L.L.C., Rapid City, SD, John J. Laravuso, Lindquist and Vennum PLLP, Minneapolis, MN, for Defendants.

## ORDER

JEFFREY L. VIKEN, District Judge.

### INTRODUCTION

This matter is before the court pursuant to a motion for remand filed by plaintiff State Farm Fire and Casualty Company (hereinafter "State Farm") on July 15, 2009.[1] (Docket 9). State Farm moves to remand the action to the state circuit court after defendant removed it to federal court. *Id.* Defendant Valspar Corporation, Inc. (hereinafter "Valspar") resists State Farm's motion to remand. (Docket 11). State Farm's motion was referred to the magistrate judge for a report and recommendation. (Docket 15). On November 6, 2009, the magistrate judge issued a report recommending remand. (Docket 16). Valspar filed objections to the report and recommendation and moved the court to consider additional evidence in the form of an e-mail exchange between Valspar's

---

1. State Farm also moved for an award of its costs and expenses, including attorneys' fees, incurred in filing the motion. (Docket 9).

counsel and counsel for Bonnie Estes. (Docket 17). The court again referred this matter to the magistrate judge to consider this new evidence and to issue a second report and recommendation. (Docket 19). After considering the additional evidence, the magistrate judge again recommended remand. (Docket 22). Valspar filed objections to this second report and recommendation. (Docket 23). This matter is now ripe for adjudication.

## DISCUSSION

Neither party disputes the factual and procedural history recited in both of the reports and recommendations issued by the magistrate judge. *See* Dockets 16 & 22. The court incorporates by reference these thorough recitations.

The court considers *de novo* the magistrate judge's reports and recommendations and the record in this case. 28 U.S.C. § 636(b)(1) ("A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made."); *Thompson v. Nix*, 897 F.2d 356, 357–58 (8th Cir.1990) ("[O]bjections must be timely and specific to trigger de novo review by the District Court of any portion of the magistrate judge's report and recommendation."). Neither party objected to the magistrate judge's first report and recommendation.[2] Upon *de novo* review, the court adopts in full the first report and recommendation (Docket 16), as supplemented by the following discussion.

Valspar raises two objections to the magistrate judge's second report and recommendation. (Docket 23). Valspar objects to the finding that the e-mail[3] submitted as an "other paper" under the removal statute, 28 U.S.C. § 1446(b), was too vague to have allowed Valspar to ascertain the action had become removable.

2. The only objection raised by Valspar to the first report and recommendation was actually a request to submit additional evidence to the magistrate judge for her consideration. (Docket 17). In light of this additional evidence, the court again referred the matter to the magistrate judge for a second report and recommendation.

State Farm filed no objections to the first report and recommendation. State Farm objected only to the court's referral of the matter for a second report and recommendation. (Docket 20). However, even after the filing of a report and recommendation, the district court may "receive further evidence or recommit the matter to the magistrate judge with instructions." 28 U.S.C. § 636(b)(1). Accordingly, the court overrules State Farm's objection (Docket 20) to the referral of this matter to the magistrate judge for a second report and recommendation.

3. A brief recitation of the relevant facts is useful at this point. On June 9, 2009, State Farm, Valspar, and Ms. Estes participated in mediation. (Docket 18, Affidavit). Counsel for Valspar left the mediation in the late afternoon after being informed by the mediator that State Farm had settled or would likely settle with Ms. Estes that day. *Id.* From the parking lot of the location of the mediation, counsel for Valspar e-mailed counsel for Ms. Estes. *Id.* In the subject line of the e-mail, he wrote "Sorry I left" and, in the body of the e-mail, he wrote "Without saying goodbye to you and your client. Best, -John-[.]" *Id.* at Exhibit A. On June 10, 2009, counsel for Ms. Estes replied "John, No problem. I enjoyed working with you on this case. I will be interested to see how it all turns out." *Id.* Valspar argues this latter e-mail constitutes an "other paper" for purposes of § 1446(b).

Also on June 10, 2009, counsel for Valspar e-mailed counsel for State Farm and counsel for Ms. Estes, asking "Gentlemen: Could you please confirm whether a settlement was reached between State Farm and Ms. Estes and, if so, what the amount was? I appreciate it. Thanks much[.]" *Id.* at Exhibit B. Counsel for Valspar did not receive a written response. *Id.* at Affidavit. Rather, on June 11, 2009, he had a telephone conversation with counsel for State Farm in which counsel for State Farm confirmed State Farm settled its claims against Ms. Estes by way of a *Pierringer* release. *Id.* Valspar argues this oral

*Id.* Valspar also objects to the finding that § 1446(b) requires a written document, rather than any type of communication, to provide sufficient notice of removability. *Id.* Conversely, State Farm urges the court to adopt the magistrate judge's reports and recommendations and grant its motion for remand to the state circuit court. (Docket 24).

## A. Whether the E-mail Satisfies § 1446(b)

■ Section 1446 of Title 28 of the United States Code sets forth the procedure for the removal of a civil action (or criminal prosecution) from state to federal court. *See* 28 U.S.C. § 1446. Subsection (b), which governs the time for removal, provides as follows:

> The notice of removal of a civil action or proceeding shall be filed within thirty days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based, or within thirty days after the service of summons upon the defendant if such initial pleading has then been filed in court and is not required to be served on the defendant, whichever period is shorter.
>
> If the case stated by the initial pleading is not removable, a notice of removal may be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable, except that a case may not be removed on the basis of jurisdiction conferred by section 1332 of this title more than 1 year after commencement of the action.[4]

28 U.S.C. § 1446(b).

■ It is undisputed the present action was not removable on or about June 27, 2008, when Valspar and Ms. Estes received a copy of State Farm's summons and complaint. (Docket 1, Exhibit A). Therefore, the second triggering event identified in § 1446(b) applies. This provision required Valspar to remove the action to federal court within thirty days of receiving notice, by means of a copy of an amended pleading, motion, order, or other paper, that the action had become removable. Valspar argues the e-mail sent by counsel for Ms. Estes was sufficient to put Valspar on notice of Ms. Estes' settlement, thereby making removal of the action to federal court proper on the basis of diversity jurisdiction.[5] (Docket 23 at pp. 2–6). The magistrate judge found the e-mail too vague to satisfy the notice requirement of § 1446(b). (Docket 22 at pp. 21–27).

---

conversation provided sufficient notice under § 1446(b) to trigger the right to remove the action to federal court. Valspar filed its notice of removal six days later, on June 17, 2009. (Docket 1). State Farm and Ms. Estes did not execute the *Pierringer* release until July 1, 2009. (Docket 12, Exhibit A). State Farm timely moved to remand on July 15, 2009. (Docket 9).

4. In short, a defendant "will have 30 days from the revelation of grounds for removal in an amended pleading, motion, order, or other paper to file its notice of removal, provided that, in diversity cases, no more than a year shall have passed from the date of the initial

pleading." *Lovern v. General Motors Corp.,* 121 F.3d 160, 162 (4th Cir.1997). The one-year deadline for removal in this case expired on June 26, 2009. (Docket 16 at p. 18).

5. Generally, to warrant removal, diversity jurisdiction must exist at the time the complaint is filed in state court and at the time the action is removed to federal court. 29A Karl Oakes, Federal Procedure § 69:21 (Lawyers ed. 2010). "However, diversity is tested only at the time of removal if removal is premised on the plaintiff's voluntary dismissal of a non-diverse defendant, and diversity need not have existed at the commencement of the state court action." *Id.*

Valspar argues the magistrate judge unreasonably failed to factor in the context of the e-mail and the adversarial realities of the case. (Docket 23 at pp. 3–6). Valspar argues the e-mail must be read with the understanding that Valspar knew, at the time of the e-mail exchange, that Ms. Estes would likely settle with State Farm. *Id.* at pp. 3–4. Valspar asserts the removability of the action was readily apparent from the e-mail if the court considers Valspar's knowledge of Ms. Estes' likely settlement. *Id.*

The court reviewed *de novo* the magistrate judge's analysis of this issue (Docket 22 at pp. 21–27) and finds it to be thorough and well-reasoned. The court incorporates by reference this analysis. Further, the court conducted an independent review of inter-circuit case law and finds it does not support Valspar's position.

■ As noted by the Court of Appeals for the Fourth Circuit, a district court need not inquire into the subjective knowledge of the defendant when determining when the defendant first ascertained the action had become removable:

> [W]e will not require courts to inquire into the subjective knowledge of the defendant, an inquiry that could degenerate into a mini-trial regarding who knew what and when. Rather, we will allow the court to rely on the face of the initial pleading and on the documents exchanged in the case by the parties to determine when the defendant had notice of the grounds for removal, requiring that those grounds be apparent *within the four comers* of the initial pleading or subsequent paper.

*Lovern,* 121 F.3d at 162 (emphasis added); *see also Weiderspahn v. Wing Enterprises, Inc.,* No. 09–2441 (JEI/AMD), 2009 WL 2070353 at *3 (D.N.J. July 10, 2009) ("Defendant's knowledge is irrelevant in determining when the time for removal begins to run."); *Tolley v. Monsanto Co.,* 591 F.Supp.2d 837, 845 (S.D.W.Va.2008) ("In determining whether grounds for removal were ascertainable from a motion, order or other paper, a court must not inquire into the subjective knowledge of the defendant."); *Harris v. Bankers Life & Cas. Co.,* 425 F.3d 689, 694 (9th Cir.2005) ("We now conclude that notice of removability under § 1446(b) is determined through examination of the four corners of the applicable pleadings, not through subjective knowledge or a duty to make further inquiry. Thus, the first thirty-day requirement is triggered by defendant's receipt of an 'initial pleading' that reveals a basis for removal. If no ground for removal is evident in that pleading, the case is 'not removable' at that stage. In such case, the notice of removal may be filed within thirty days after the defendant receives 'an amended pleading, motion, order or other paper' from which it can be ascertained *from the face of the document* that removal is proper.") (emphasis added); *Bosky v. Kroger Texas, LP,* 288 F.3d 208, 211 (5th Cir.2002) (noting "ascertain" means "to make certain, exact, or precise" or "to find out or learn with certainty" and holding "the information supporting removal in a copy of an amended pleading, motion, order or other paper must be 'unequivocally clear and certain' to start the time limit running for a notice of removal under the second paragraph of section 1446(b)").[6]

---

**6.** There is little guidance on this issue from the Court of Appeals for the Eighth Circuit. However, the court finds instructive the holding in *In re Willis,* which interpreted the first paragraph of § 1446(b) within the context of determining the amount in controversy. 228 F.3d 896, 897 (8th Cir.2000) (*per curiam*). The Eighth Circuit found "the thirty-day time limit of section 1446(b) begins running upon receipt of the initial complaint only when the

The benefit of enforcing a bright-line rule is substantial:

> This ["unequivocally clear and certain"] threshold promotes judicial economy. It should reduce "protective" removals by defendants faced with an equivocal record. It should also discourage removals before their factual basis can be proven by a preponderance of the evidence through a simple and short statement of the facts. In short, a bright-line rule should create a fairer environment for plaintiffs and defendants.

*Bosky,* 288 F.3d at 211. In *Gottlieb v. Firestone Steel Products Co.,* the court expressed similar policy considerations in support of its position that the "other paper" must provide clear notice of removability:

> The removal statute is designed to provide a "uniform and definite time for a defendant to remove an action." Defendants should not be required to "guess" when a case becomes removable. To hold otherwise would require defendants to resolve questions as to removability in favor of early, and perhaps unwarranted, removal. Such a situation would create havoc on the dockets of both state and federal courts....

524 F.Supp. 1137, 1140 (E.D.Pa.1981) (internal citation omitted).

■ When considered on its face without consideration of the subjective knowledge of Valspar, the e-mail sent by Ms. Estes' counsel simply is too vague to have provided clear notice the action had become removable. "If the statute is going to run, the notice ought to be unequivocal. It should not be one which may have a double design." *DeBry v. Transamerica Corp.,* 601 F.2d 480, 489 (10th Cir.1979). The notice "should not be an ambiguous statement that requires an extensive investigation to determine the truth." *Id.* at 490; *see also Farmland National Beef Packing Co., L.P. v. Stone Container Corp.,* 98 Fed.Appx. 752, 755 (10th Cir. 2004) ("[F]or a paper to fall within the removal statutes, it must be unambiguous."); *Akin v. Ashland Chemical Co.,* 156 F.3d 1030, 1036 (10th Cir.1998) (requiring a "clear and unequivocal notice from the pleading itself, or a subsequent 'other paper'" that the action had become removable). Thus, the key is whether the e-mail *itself* clearly and unequivocally provides the requisite notice of removability. The context surrounding the e-mail, that is, Valspar's subjective knowledge of Ms. Estes' likely settlement, is irrelevant to this determination. Valspar acknowledges the e-mail "confirmed, *impliedly,* the fact that no one has ever disputed—that ... [Ms. Estes] had indeed settled...." (Docket 17 at p. 4) (emphasis added). To satisfy the notice requirement of § 1446(b), the e-mail must confirm *unequivocally,* rather than merely impliedly, the settlement of Ms. Estes.

■ Valspar also argues the magistrate judge "ignore[d] the adversarial realities of the case" by suggesting ways in which Valspar could have obtained more

---

complaint *explicitly* discloses the plaintiff is seeking damages in excess of the federal jurisdictional amount.... This rule 'promotes certainty and judicial efficiency by *not requiring courts to inquire into what a particular defendant may or may not subjectively know.' " Id.* (emphasis added) (quoting *Chapman v. Powermatic, Inc.,* 969 F.2d 160, 163 (5th Cir.1992)).

As the Fifth Circuit explained, the requirements for removal jurisdiction under the second paragraph of § 1446(b) are more strident and require a greater level of certainty than under the first paragraph of § 1446(b). *Bosky,* 288 F.3d at 211. If the Eighth Circuit requires initial pleadings to explicitly state the grounds for jurisdiction and prohibits courts from inquiring into the subjective knowledge of defendants when determining removability under the first paragraph of § 1446(b), it is logical the Eighth Circuit would apply this same standard to the second paragraph of § 1446(b).

concrete documentation of the settlement agreement between State Farm and Ms. Estes. (Docket 23 at p. 6). This court disagrees and is mindful of the fact that Valspar, as the removing defendant, bears the burden of proving removal is proper and all prerequisites to federal jurisdiction are satisfied. *See In re Business Men's Assurance Co. of America,* 992 F.2d 181, 183 (8th Cir.1993) (*per curiam*) (citing *Bor–Son Bldg. Corp. v. Heller,* 572 F.2d 174, 182 n. 13 (8th Cir.1978)); *McShares, Inc. v. Barry,* 979 F.Supp. 1338, 1342 (D.Kan.1997) ("The removing party has the burden to show that removal was properly accomplished."). Further, "[a]ll doubts [about] whether the statute's requirements have been met are resolved against removal." *Roybal v. City of Albuquerque,* No. 08–181, 2008 WL 5991063 at *2 (D.N.M. Sept. 24, 2008); *see also Harris,* 425 F.3d at 698 ("[R]emoval statutes should be construed narrowly in favor of remand to protect the jurisdiction of state courts.") (citing *Shamrock Oil & Gas Corp. v. Sheets,* 313 U.S. 100, 108–09, 61 S.Ct. 868, 85 L.Ed. 1214 (1941)); *Entrekin v. Fisher Scientific Inc.,* 146 F.Supp.2d 594, 604 (D.N.J.2001) (Courts must "strictly construe the removal statutes against removal and resolve any doubts in favor of remand.").

Upon review of the applicable case law, the court agrees with the magistrate judge that the e-mail is too ambiguous to prove the parties were completely diverse in citizenship at the time of removal. The e-mail cannot satisfy the notice requirement of § 1446(b).

## B. Whether an Oral Communication Satisfies § 1446(b)

■ In the alternative, Valspar argues the conversation between counsel for Valspar and counsel for State Farm, during which counsel for State Farm indicated Ms. Estes had settled, satisfies the notice requirement of § 1446(b). (Docket 23 at pp. 6–9). The magistrate judge found § 1446(b) required a written document evidencing the right to remove. (Docket 16 at pp. 16–25; Docket 22 at pp. 11–21). The court reviewed *de novo* the magistrate judge's thorough and well-reasoned analysis on this issue and incorporates it by reference herein. The court also conducted an independent review of inter-circuit case law.

The Court of Appeals for the Eighth Circuit has not provided guidance on this precise issue, and courts in other circuits are divided. Indeed, as discussed below, the second paragraph of § 1446(b) has generated a veritable cornucopia of conflicting decisions and rules. This quagmire is due, in large part, to the fact § 1446(b) does not define "other paper" in its terms or in its legislative history. *Broderick v. Dellasandro,* 859 F.Supp. 176, 178 (E.D.Pa.1994); *Sunburst Bank v. Summit Acceptance Corp.,* 878 F.Supp. 77, 81 (S.D.Miss.1995).

■ The clear purpose of § 1446(b) is "to commence the running of a new 30-day period once the defendant has received actual notice, through one of the documents described in Section 1446(b), that a previously unremovable case has become removable."[7] 14C Charles A. Wright, Arthur R. Miller, Edward H. Coo-

---

**7.** Several courts have held that it is only the *plaintiff's* voluntary act that gives rise to "other paper" under § 1446(b). *See, e.g., Jones v. Hartford Fire Ins. Co.,* 347 F.Supp.2d 328, 331 (S.D.Miss.2004) ("'Other paper' is continually defined as 'the voluntary act of a plaintiff which gives the defendant notice of the changed circumstances which now support federal jurisdiction.'") (quoting *Addo v.*

*Globe Life and Acc. Ins. Co.,* 230 F.3d 759, 762 (5th Cir.2000)); *John Hunter, Inc. v. Great Impressions Apparel, Inc.,* 313 F.Supp.2d 644, 646 (N.D.Tex.2002) (noting a plaintiffs voluntary acts may include plaintiff's deposition transcripts, written settlement offers, demand letters, and responses to discovery requests); *S.W.S. Erectors, Inc. v. In-*

per, & Joan E. Steinman, *Federal Practice and Procedure* § 3731 at p. 519 (4th ed. 2009) (footnote omitted). "[F]ederal courts have given the reference to 'other paper' an expansive construction and have included a wide array of documents within its scope." *Id.* at p. 524 (footnote omitted); *see also Bowyer v. Countrywide Home Loans Servicing LP*, No. 5:09-cv-00402, 2009 WL 2599307 at *3 (S.D.W.Va. Aug. 21, 2009) (noting courts take "a rather expansive view of the term 'other paper'" and "nearly any written document generated in the course of litigation and received by the defendant can supply grounds for removal"). Courts differ as to how formal or informal the notice must be in order to satisfy § 1446(b). *Smith v. Bally's Holiday*, 843 F.Supp. 1451, 1454 (N.D.Ga.1994). For example, courts have held, in cases involving the settlement of non-diverse defendants, "formal dismissal is not a prerequisite for removability" or for adequate notice under § 1446(b). *Hessler v. Armstrong World Industries, Inc.*, 684 F.Supp. 393, 395 (D.Del.1988); *see also Lesher by Lesher*, 647 F.Supp. at 922 (finding a formal order dismissing a

non-diverse defendant was not a prerequisite to removal). Additionally, notice of removability under § 1446(b) may be provided by answers to discovery requests. *Tolley*, 591 F.Supp.2d at 845 (construing "other paper" to include requests for admissions, deposition testimony, answers to interrogatories, settlement offers, briefs, and documents provided in discovery); *Roberts v. Anchor Packing Co.*, No. 2:05-CV-320, 2005 WL 1201212 at *1 (S.D.W.Va. May 19, 2005) (same); *JHohman, LLC v. U.S. Sec. Associates, Inc.*, 513 F.Supp.2d 913, 916 (E.D.Mich.2007) (collecting cases); *Cabibbo v. Einstein/Noah Bagel Partners, L.P.*, 181 F.Supp.2d 428, 431–33 (E.D.Pa.2002) (collecting cases).

Courts also have allowed less formal writings, such as correspondence between counsel, to qualify as "other paper." *JHohman*, 513 F.Supp.2d at 916 (collecting cases); *Sunburst Bank*, 878 F.Supp. at 81–82 (holding § 1446(b) was not restricted solely to papers formally filed in the case and finding plaintiffs demand letter satisfied the "other paper" requirement); *Hessler*, 684 F.Supp. at 395 (finding the re-

---

*fax, Inc.*, 72 F.3d 489, 493–94 (5th Cir.1996) (holding defense counsel's subjective knowledge obtained through a telephone conversation with plaintiff's counsel did not qualify as an "other paper," even when defense counsel memorialized the information in an affidavit, because the subjective knowledge of the defendant could not convert a non-removable action into a removable action and the affidavit did not represent a voluntary act of the plaintiff); *Preaseau v. Prudential Ins. Co.*, 591 F.2d 74, 76–77 (9th Cir.1979) (holding a cause of action became removable only when the plaintiff took an affirmative action to dismiss the claim against non-diverse defendants); *see also DeBry*, 601 F.2d at 487–88 (discussing the voluntary requirement).

A minority of courts, however, have interpreted the triggering event under § 1446(b) to be the state court's ruling on plaintiffs act. *See, e.g., Graphic Scanning Corp. v. Yampol*, 677 F.Supp. 256, 258 (D.Del.1988) (holding it

was the state court's ruling on plaintiff's motion for realignment, not the filing of the motion, that triggered the running of the removal clock because it was only when the state court ruled on the motion that the grounds for removal actually existed) (relying on *Schoonover v. West American Ins. Co.*, 665 F.Supp. 511, 514 (S.D.Miss.1987) (time period for removal under § 1446(b) did not begin until state court granted plaintiff's motion to amend complaint); *Lesher by Lesher v. Andreozzi*, 647 F.Supp. 920, 922 (M.D.Pa.1986) (appropriate date under § 1446(b) was the date the state court approved a proposed settlement agreement dismissing nondiverse defendants [because the settlement required court approval to become legally effective] ); and *Vidmar Buick Co. v. General Motors Corp.*, 624 F.Supp. 704, 706 (N.D.Ill.1985) (section 1446(b) contemplates situations in which defendants wait for enabling state court orders before removing to federal court)).

moval clock began to run when defendants received a letter from plaintiff stating that a settlement had been reached with the non-diverse defendants, not when notice of the settlement was provided to the court or when the non-diverse defendants were formally dismissed); *but see Textile Chemical Co. v. Aetna Cas. and Sur. Co.*, No. Civ.A. 97–2142, 1997 WL 537408 at *2 (E.D.Pa. Aug. 5, 1997) (holding plaintiffs letter did not constitute an "other paper" because that category included only court-filed documents); *Bonnell v. Seaboard Air Line R.R.*, 202 F.Supp. 53, 55 (N.D.Fla. 1962) (stating that "mere correspondence" between counsel did not fall within the definition of "other paper").

"Although the requisite notice of removability may be communicated to defendants in either a formal or informal manner, the communication should be in writing." [8] Wright, Miller, Cooper, & Steinman, supra, § 3731 at pp. 552–53. A majority of courts have strictly construed the language of § 1446(b) to require a written document. *See, e.g., Quintana v. Werner Enterprises, Inc.*, No. 09 Civ. 7771(PKC), 2009 WL 3756334 at *1 (S.D.N.Y. Nov. 2, 2009) (noting an oral assertion was insufficient to trigger the thirty-day removal clock because the plain text of § 1446(b) refers only to a pleading, motion, order or "other paper"); *Bowyer*, 2009 WL 2599307 at *3 ("The 'receipt' of information in writing, whether formally or informally, from the plaintiff is a necessary event that commences the thirty-day window to remove. The defendant's subjective knowledge of grounds for removal is irrelevant and cannot independently create a right to remove the case.") (internal citation omit-

ted); *CMS Security, Inc. v. Burlington Ins. Co.*, No. C–09–2217 MMC, 2009 WL 2252106 at *1 (N.D.Cal. July 28, 2009) (finding an oral communication between counsel insufficient to constitute an "other paper"); *Weiderspahn*, 2009 WL 2070353 at *3 (noting defendant's knowledge was irrelevant in determining when the removal clock began to run and the Court of Appeals for the Third Circuit had interpreted the "other paper" requirement narrowly to exclude facts a defendant knew from oral communications); *Mendoza v. OM Financial Life Ins. Co.*, No. C 09–01211 JW, 2009 WL 1813964 at *5 (N.D.Cal. June 25, 2009) (noting oral communications between the parties did not constitute "other paper"); *JHohman*, 513 F.Supp.2d at 919 ("This Court agrees with the decisions holding that the statutory requirement of 'receipt' of a 'paper' mandates some sort of written notice that a case has become removable, as opposed to a defendant's mere acquisition of such knowledge through other means."); *Brooks v. Boise Cascade L.L.C.*, No. 08–CV–200–GFK–SAJ, 2008 WL 2673357 at **3–4 (N.D.Okla. June 26, 2008) (finding a phone message from plaintiffs counsel was not an "other paper" given the plain language of § 1446(b) required a written communication to trigger removal); *Garcia v. Shelter Gen. Ins. Co.*, No. 07–CV–0156–CVE–SAJ, 2007 WL 1302599 at **1–2 (N.D.Okla. May 2, 2007) (finding a telephone communication between counsel insufficient to satisfy the notice requirement of § 1446(b) given the plain language of the statute and the presumption against removal); *Mariners Hosp. v. Neighborhood Health Partnership, Inc.*, No. 03–21543–CIV–LENARD, 03–21543–

---

**8.** Most courts have held § 1446(b) does not require formal service of the "other paper" to trigger the removal clock. *See, e.g., Broderick*, 859 F.Supp. at 178. The statute clearly states notification "may be 'through service or otherwise.'" *Id.* (quoting 28 U.S.C. § 1446(b)) (emphasis in original). "Thus, while Congress insisted that the notice of facts permitting removal must be in an 'amended pleading, motion, order or other paper,' the method of delivery or receipt of the writing was not circumscribed." *Id.*

CV–SIMONTON, 2004 WL 3201003 at *2 (S.D.Fla. March 31, 2004) (holding oral conversations between the parties did not satisfy § 1446(b) because the statute allowed only for written notice); *Polk v. Sentry Insurance,* 129 F.Supp.2d 975, 979 (S.D.Miss.2000) ("[T]his court notes that the statute clearly prescribes that the time for removal begins to run when the defendant receives the requisite *written* notice of facts, as opposed to oral and implied notifications, which make the case removable. The actual knowledge of the defendant prior to the receipt of the writing is irrelevant to the determination of when a case became removable under § 1446(b).") (internal citations omitted) (emphasis in original); *Broderick,* 859 F.Supp. at 178 (finding § 1446(b) clearly required "written notice of facts which make the case removable"); *Jong v. Gen. Motors Corp.,* 359 F.Supp. 223, 226 (N.D.Cal.1973) ("[T]he time period to remove an action cannot depend on the defendant's actual knowledge, because the statute expressly allows the defendant to rely on papers presented to it.").

Sound policy considerations justify the majority view that § 1446(b) requires a written document. The writing requirement "reduces disputes over knowledge of diversity or the amount in controversy and helps avoid later battles of credibility between opposing parties and lawyers." *Broderick,* 859 F.Supp. 176 at 178; *accord Thomas v. Ritter,* No. 3:98CV530–H, 1999 WL 1940047 at *2 (W.D.N.C. Feb. 11, 1999) (noting, within the context of establishing the amount in controversy, oral communications "would present enormous proof problems, and potentially require an evidentiary hearing on every notice of removal and motion for remand"). Further, requiring written notification avoids time-consuming collateral litigation over the defendant's subjective knowledge—litigation which wastes judicial resources. *Molina v. Lexmark Int'l, Inc.,* No. CV 08–04796 MMM (FMx), 2008 WL 4447678 at *17 (C.D.Cal. Sept. 30, 2008); *see also Local Union No. 172 v. P.J. Dick Inc.,* 253 F.Supp.2d 1022, 1025 (S.D.Ohio 2003) (advising courts, when determining the appropriateness of removal, to adhere to "clear and intelligible rules" so as to avoid "needless and time-consuming collateral litigation").

A minority of courts have allowed oral statements to satisfy the notice requirement of § 1446(b) when such statements were made during a court proceeding or a deposition.[9] *See, e.g., King v. Kayak Mfg.*

9. Whether the actual giving of plaintiff's deposition testimony or defendant's receipt of the written transcript triggers the removal clock is a matter of debate among courts. *Compare Huffman v. Saul Holdings Ltd. Partnership,* 194 F.3d 1072, 1078 (10th Cir.1999) (collecting cases and adopting the view that deposition testimony qualified as an "other paper" because it "stands on equal footing with written forms of discovery" and, as there is no deadline for obtaining a transcript, the date of receipt of a transcript could be subject to manipulation); *Poole v. Western Gas Resources, Inc.,* No. CIV.A. 97–2929, CIV.A. 97–3035, 1997 WL 722958 at *2 (E.D.La. Nov. 18, 1997) (finding plaintiffs' deposition testimony provided sufficient notice under § 1446(b) because there was "no functional difference between a deposition and a transcript of a deposition for purposes of the removal statute"); and *Haber v. Chrysler Corp.,* 958 F.Supp. 321, 327 (E.D.Mich.1997) (finding plaintiffs deposition testimony constituted an "other paper") *with S.W.S. Erectors, Inc.,* 72 F.3d at 494 (finding a deposition transcript qualified as "other paper" under § 1446(b)); and *Mill–Bern Associates, Inc. v. Dallas Semiconductor Corp.,* 69 F.Supp.2d 240, 241–44 (D.Mass.1999) (considering the canons of statutory interpretation and finding neither the oral deposition nor the deposition transcript constituted an "other paper"). Alternatively, when determining if deposition testimony is an "other paper," some courts focus on whether the deposition is a truly voluntary act of the plaintiff. *Rivers v. Int'l*

*Corp.*, 688 F.Supp. 227 (N.D.W.Va.1988) (case became removable when the court stated from the bench that non-diverse defendant was no longer a party); *Mike Silverman & Associates v. Drai*, 659 F.Supp. 741, 745 (C.D.Cal.1987) (case became removable once the time for service of the John Doe defendants elapsed and defendants learned, in a hearing before the state court, that plaintiff previously dismissed the remaining non-diverse defendant); *Heniford v. American Motors Sales Corp.*, 471 F.Supp. 328, 334–35 (D.S.C. 1979) (case became removable when plaintiff's counsel, in closing argument, admonished the jury not to enter a verdict against the sole remaining non-diverse defendant); *First National Bank in Little Rock v. Johnson & Johnson*, 455 F.Supp. 361, 362 (E.D.Ark.1978) (case became removable when the court granted, on the record, plaintiffs oral motion to dismiss the non-diverse defendant); *Fuqua v. Gulf, Colorado and Santa Fe Railway Co.*, 206 F.Supp. 814, 815–16 (E.D.Okla.1962) (case became removable when plaintiff revealed during his deposition that the non-diverse defendant was not a proper party); *see also* footnote 8, *supra*. These decisions rest on the proposition that the purpose of the rule is to trigger the removal clock when the defendant is able to ascertain intelligently the action has become removable. *See Mike Silverman*, 659 F.Supp. at 746 n. 9 (relying on *First National Bank*, 455 F.Supp. at 362 n. 1, and *Heniford*, 471 F.Supp. at 335).

The court considers this minority of cases to be limited to their unique circumstances. The cases "have one key distinguishing feature in common: the oral notices were given in court proceedings and/or in the presence of the presiding judge, thereby removing any proof problems regarding who said what at what time." *Thomas*, 1999 WL 1940047 at *2 n. 2. It is highly likely the oral statements, made in court or during a deposition, were reduced to writing simultaneously by a court reporter, who is a neutral recorder of the statements. *Smith*, 843 F.Supp. at 1454 (finding an oral communication between counsel, "not reduced to writing (or not capable of immediate reduction to writing)" did not satisfy the notice requirement of § 1446(b)). The transcript would be "available for examination without necessitating any complex and potentially troublesome dispute over what was actually said." *Entrekin*, 146 F.Supp.2d at 614; *see also Smith*, 843 F.Supp. at 1455 ("There is little danger that oral statements in open court or in a deposition will be mistranscribed, and any mistake therein is likely to be immediately addressed."). "Even if the statement is not transcribed, the formal setting of the statement, including the possible presence of a judge, certainly ameliorates further conflicts over the content of the statement." *Entrekin*, 146 F.Supp.2d at 614. Further, the oral statements were made under oath in a formal, legal setting, which seemed to have been of significance to some courts when deciding whether the statements satisfied § 1446(b). *See, e.g., Fuqua*, 206 F.Supp. at 816 (finding plaintiffs deposition testimony was an "other paper" because it was taken pursuant to the laws of the state).

To the extent these cases hold § 1446(b) simply does not require written notice,[10]

*Matex Tank Terminal*, 864 F.Supp. 556, 559 (E.D.La.1994) (collecting cases).

10. *See, e.g., Huntsman Chemical Corp. v. Whitehorse Technologies, Inc.*, No. 97 C 3842, 1997 WL 548043 at *6 (N.D.Ill. Sept. 2, 1997) ("The section 1446(b) triggering event is the acquisition of information by the defendant that allows it to determine whether the case is removable. How that information is acquired is immaterial."); *Heniford*, 471 F.Supp. at 335–36 (determining the writing requirement was a technicality that could not defeat removal if defendant had actual notice of the dismissal of the non-diverse defendant); *Kayak*, 688 F.Supp. at 230 ("Authority exists to

the court respectfully disagrees. Upon careful review of the extensive and often contradictory body of research on this issue, the court finds the plain language of the statute clearly requires some written document by the plaintiff evidencing the dismissal of the non-diverse defendant. Although the Eighth Circuit has not provided guidance on this precise issue, the court finds instructive the analysis in *Dahl v. R.J. Reynolds Tobacco Co.*, 478 F.3d 965 (8th Cir.2007). In *Dahl*, defendant attempted to remove the action to federal court based on diversity jurisdiction. *Id.* at 966. Plaintiffs filed a motion to remand, which the district court granted. *Id.* In state court, defendant moved to dismiss the case, arguing the claims were preempted by federal law. *Id.* The state court granted defendant's motion to dismiss, and plaintiff appealed. While the appeal was pending, the Eighth Circuit decided a factually-similar case, in which it held the case could be removed on the basis of federal officer jurisdiction. *Id.* at 967.

Based on this decision in the other case, defendant again attempted to remove to federal court, asserting federal officer jurisdiction. *Id.* Plaintiffs moved to remand, arguing in relevant part the notice of removal was not timely under § 1446(b). *Id.* Plaintiff argued the Eighth Circuit decision that triggered defendant's removal did not qualify as an "other paper" under § 1446(b). *Id.*

The Eighth Circuit noted that "[f]ederal courts are to 'resolve all doubts about federal jurisdiction in favor of remand' and are *strictly* to construe legislation permitting removal." *Id.* at 968 (emphasis added). The Eighth Circuit further noted, when interpreting the terms of any statute, including the removal statute, courts should begin with its plain language. *Id.*

at 969. The Eighth Circuit's analysis of § 1446(b) is helpful:

> All of the document types listed in § 1446(b) are commonly produced in the course of litigating an individual case of any complexity, and each might introduce a new element into the case which could affect jurisdiction. For example, federal jurisdiction could be created by an amended pleading adding a federal cause of action or an order dismissing a non diverse party. The types of documents mentioned in § 1446(b) are listed in a logical sequence in the development of an individual case. In light of this context, in which the words "order or other paper" follow immediately after amended pleading and motion, it would be an unsupported stretch to interpret "order" to include a decision in a separate case with different parties.
>
> If Congress had intended new developments in the law to trigger the recommencement of the thirty day time limit, it could have easily added language making it clear that § 1446(b) was not only addressing developments within a case. Our interpretation of § 1446(b) is consistent with the canon of statutory interpretation that when "several items in a list share an attribute," courts are to construe "the other items as possessing that attribute as well." Moreover, courts have interpreted the "other paper" term in § 1446(b) to apply to *papers and documents* involved in the case being removed.

*Id.* (internal citations omitted) (emphasis added). The Eighth Circuit concluded an order from an unrelated case with different parties did not qualify as an "other paper." *Id.* at 970; *see also Sunburst Bank*, 878 F.Supp. 77 at 80 (listing cases construing "other paper" to refer only to

support the Court's conclusion that a written order is not necessarily a paramount consideration in determining whether a case is ripe for removal.").

papers generated within the course of litigation).

Given the emphasis in *Dahl* on the canons of statutory construction, the court believes the Eighth Circuit would favor the view that § 1446(b) requires written notice of removability. The court also is concerned with the thorny implications of allowing oral communications to satisfy the statute—such a policy would set the stage and establish precedence for future battles over the contents of a verbal conversation. To avoid this slippery slope, requiring written notice of removability is a better approach and will prevent wasteful collateral litigation that drains judicial resources and unnecessarily protracts a case.

 The court addresses one final argument submitted by Valspar. Valspar argues, because the parties do not dispute State Farm resolved its claims against Ms. Estes on June 9, 2009, "[t]he 'other paper' requirement here is irrelevant and should not bar removal." (Docket 23 at p. 8). Valspar relies primarily on those minority of cases, cited above, that allow oral communications to satisfy the notice requirement of § 1446(b). (Dockets 17 & 23). The court declines to extend the limited holdings in those cases to the case at bar for to do so would undermine sound judicial policy. The court disagrees with the position that the "other paper" requirement is incidental. The court acknowledges the time limits prescribed by § 1446(b) are procedural, rather than jurisdictional. *Williams v. Safeco Ins. Co. of America*, 74 F.Supp.2d 925, 928 (W.D.Mo. 1999). However, those limits "are mandatory, and are to be construed against conferring federal jurisdiction." *Smith*, 843 F.Supp. at 1456 n. 6. Further, "[a]ny technical defect in the removal procedure requires a remand unless the plaintiff fails to move for a remand within thirty days of removal." *Williams*, 74 F.Supp.2d at 928; *see also Link Telecomms., Inc. v. Sapper-*

*stein*, 119 F.Supp.2d 536, 542 (D.Md.2000) ("Untimely removal constitutes a defect in removal procedure. A defect in removal procedure renders a case improperly removed.") (internal citation omitted). Indeed, the removal statutes contemplate remands based on procedural defects. *See* 28 U.S.C. § 1447(c) ("A motion to remand the case on the basis of any defect other than lack of subject matter jurisdiction must be made within 30 days after the filing of the notice of removal under section 1446(a).").

The court agrees with the magistrate judge that remand is appropriate in this case. Upon *de novo* review, the court adopts in full the magistrate judge's second report and recommendation (Docket 20), as supplemented by the above discussion.

## CONCLUSION

In accord with the above discussion, it is hereby

ORDERED that plaintiff's motion to remand (Docket 9) is granted in part and denied in part. The action is remanded to the Seventh Judicial Circuit Court, Pennington County, South Dakota. The court denies State Farm's motion for costs and expenses incurred in filing its motion to remand as Valspsar's position was reasonable given the split in authority discussed above.

IT IS FURTHER ORDERED that the magistrate judge's reports and recommendations (Dockets 16 & 22) are adopted in full as supplemented by the analysis in this order.

IT IS FURTHER ORDERED that Valspar's objections (Dockets 17 & 23) to the reports and recommendations are denied.

## REPORT AND RECOMMENDATION ON PLAINTIFF'S MOTION TO REMAND [DOCKET 9]

VERONICA L. DUFFY, United States Magistrate Judge.

### INTRODUCTION

This matter is before the court on the Notice of Removal filed by defendant the Valspar Corporation, Inc. (hereinafter "Valspar"). Pending before the court is a motion to remand this matter back to state court [Docket No. 9] filed by plaintiff State Farm Fire and Casualty Company (hereinafter "State Farm"). The district court, the Honorable Jeffrey L. Viken, referred State Farm's motion to this magistrate judge for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). *See* Docket No. 15.

### FACTS

#### A. Proceedings in State Court

On June 28, 2005, Bonnie Estes, a resident of Rapid City, South Dakota, was helping her neighbor, Ramona Policky, stain the deck attached to Ms. Policky's home, using a product manufactured by Valspar. Ms. Estes allegedly left some rags and/or brushes contaminated with the Valspar product sealed in plastic bags on Ms. Policky's deck. The bag ignited, starting a fire which caused "hundreds of thousands of dollars" [1] in damage to Ms. Policky's real and personal property, which was insured by State Farm.

State Farm paid Ms. Policky's claim under her policy with it, and then brought this subrogation action against Ms. Estes and Valspar in South Dakota state court for the Seventh Judicial Circuit on June

26, 2008. State Farm alleged a single claim of negligence against Ms. Estes. Against Valspar, State Farm asserted claims of negligence in failing to warn, breach of the warranties of merchantability and fitness for a particular purpose, and strict liability for failure to warn.

In Valspar's notice of removal, State Farm is alleged to be a citizen of the state of Illinois, the state of its incorporation, and is alleged to have its principal place of business in Illinois as well. *See* Docket No. 1. Valspar alleges it is a citizen of Delaware, the state of its incorporation, and also of Minnesota, the place of its principal place of business. *Id.* In opposing removal, State Farm does not deny these allegations as to citizenship, so the court takes them to be true for purposes of resolving State Farm's motion to remand.

Ms. Estes answered State Farm's complaint in state court, denying liability and asserting a cross claim against Valspar. Valspar answered State Farm's complaint, also denying liability and also asserting a cross claim against Ms. Estes.

The parties thereafter engaged in various discovery, including the taking of Ms. Estes' deposition, the admission of various attorneys *pro hac vice*, and the securing of a protection order from the state court for various matters asserted by Valspar to be proprietary and confidential.

On June 1, 2009, Valspar moved for summary judgment against State Farm in the state court. One of the grounds asserted by Valspar in favor of summary judgment against State Farm is that State Farm's state law claims against Valspar are preempted by federal law. No ruling

---

1. The allegation as to the amount of damage caused by the fire is taken from State Farm's complaint against the defendants filed in state court. For purposes of the instant motion, no party has taken issue with this representation.

Therefore, for purposes of determining the court's jurisdiction under 28 U.S.C. § 1332, the court assumes that the amount in controversy element has been met.

by the state court appears of record in these proceedings.

## B. The Settlement Between State Farm and Bonnie Estes

On June 9, 2009, a mediation between all three parties was had. Neither Valspar nor Bonnie Estes settled their cross-claims against one another. State Farm did not settle its claim against Valspar. However, State Farm did enter into a *Pierringer* release with Ms. Estes.[2] As a result of the release between State Farm and Ms. Estes, Ms. Estes was never dismissed from the state court action. Indeed, under existing South Dakota law, it is doubtful that plaintiff and Ms. Estes could have obtained an order of the state court dismissing Ms. Estes from the lawsuit due to the existing cross claims between Ms. Estes and Valspar. *See Shaull v. Hart,* 327 N.W.2d 50, 54 (S.D.1982) (holding that the trial court did not err in refusing to dismiss defendant with whom plaintiff had settled because the remaining defendant had asserted a cross-claim and dismissal could have deprived the remaining defendant of the opportunity to have the jury apportion fault between itself and the settling defendant); *Schoniger v. Logan,* 40 S.D. 30, 166 N.W. 226 (1918) (plaintiff has no right to voluntary dismissal where defendant has asserted a counterclaim or other valid claim to affirmative relief).

The release between State Farm and Ms. Estes contained the following provisions. Ms. Estes and her insurer agreed to pay State Farm $250,000. *See* Docket No. 10–2. In return, State Farm agreed to release both Ms. Estes and her insurer from all liability to State Farm and Ms. Policky as a result of the June 28, 2005, fire. *Id.* In addition, State Farm agreed to indemnify Ms. Estes for any loss, dam-

age, or expense occasioned by any claims asserted against Ms. Estes by Valspar or any third party as a result of the fire. *Id.* Finally, State Farm agreed that any damages it recovered against Valspar for the fire would be off-set by the $250,000 paid to State Farm by Ms. Estes, or by the sum the jury determined to be Ms. Estes' *pro rata* share of the damages, whichever sum was larger. *Id.*

The written memorialization of this release between State Farm and Ms. Estes was not signed until July 1, 2009. *Id.* Prior to that date, Valspar was orally notified of the agreement reached by State Farm and Ms. Estes. *See* Docket No. 12. Based upon this oral notification of a still-oral agreement, Valspar removed the action from state court to this court, alleging that there was complete diversity of citizenship among the parties and that Ms. Estes' citizenship was no longer of any moment because State Farm had settled with her. *See* Docket No. 1.

State Farm moved to remand this matter back to state court on July 15, 2008. Valspar resists the motion, arguing that removal was proper.

## DISCUSSION

### A. General Law Applicable to Removal of Actions from State Court

Resolution of State Farm's motion requires the examination of several statutes. Under 28 U.S.C. § 1332, this court has original jurisdiction of civil matters where the parties have completely diverse citizenship and the amount in controversy is greater than $75,000. *See* 28 U.S.C. § 1332(a).

Federal district courts are also granted "removal jurisdiction." *See* 28 U.S.C.

---

**2.** The name of the release derives from the decision in *Pierringer v. Hoger,* 21 Wis.2d 182, 124 N.W.2d 106 (Wis.1963).

§ 1441. That is, lawsuits that are begun in state court may, under some circumstances, be "removed" to federal court if the prerequisites for federal court jurisdiction may be met, along with other requirements. *Id.*

"The right to remove a case from a state to a federal court is purely statutory and therefore its scope and the terms of its availability are entirely dependent on the will of Congress." 14B Charles A. Wright, Arthur R. Miller, & Edward H. Cooper, *Federal Practice & Procedure*, § 3721, 285–86 (3d ed. 1998). The removal statutes are to be strictly construed because they are in derogation of state governments. *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 109, 61 S.Ct. 868, 85 L.Ed. 1214 (1941). However, because an order remanding a case back to state court is not appealable, federal courts should be cautious about remanding so that they do not deprive a removing defendant of its statutory right to a federal forum. 14B *Federal Practice & Procedure*, § 3721, at 352.

■■■ This court's original jurisdiction in diversity cases is broader than its removal jurisdiction in diversity cases. *Compare* 28 U.S.C. § 1332, *with* 28 U.S.C. § 1441. This court has removal jurisdiction over matters that it would have had diversity jurisdiction under § 1332 had the action been filed in federal court originally *only* if none of the defendants is a resident of the state in which the state court action is pending at the time removal is sought. *See* 28 U.S.C. § 1441(a) and (b).[3] Thus, assuming complete diversity of citizenship as between all plaintiffs and all defendants,

an action in which a South Dakota citizen is a defendant may be filed originally in federal district court for the District of South Dakota, but if it is first filed in South Dakota state court, it may not be removed to the District of South Dakota. *Id.*

When this matter was first filed in South Dakota state court, it was not removable because Bonnie Estes was a named defendant and she is a citizen of the state of South Dakota. Thus, under § 1441(b), removal on the basis of diversity of citizenship was not allowed. *See* 28 U.S.C. § 1441(b).

However, if a case presented by a plaintiff's "initial pleading is not removable, a notice of removal may be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable...." *See* 28 U.S.C. § 1446(b). In no case may a state court action be removed to federal court where more than one year has passed after commencement of the action. *Id.* Here, Valspar removed this matter to federal court within 30 days of learning of the oral settlement agreement between State Farm and Ms. Estes and prior to the one-year period following commencement of the action.

■■■ Once a case is removed to federal district court, any motion to remand the matter back to state court must be made within 30 days of the notice of re-

---

**3.** The difference between original diversity jurisdiction and removal jurisdiction based on diversity is explained by the policy supporting removal jurisdiction in the first place: removal jurisdiction was created to "protect nonresidents from the local prejudices of state courts." 14B *Federal Practice & Procedure*, § 3721, page 289. Thus, a nonresident defendant is entitled to remove his case to federal court, assuming the basis for diversity jurisdiction is present. A defendant sued in state court in his own home state is not in danger of being affected by xenophobic prejudices, and, thus, Congress did not provide removal jurisdiction for such defendants.

moval. *See* 28 U.S.C. § 1447(c). Valspar filed its notice of removal on June 17, 2009, (*see* Docket No. 1), and State Farm moved to remand on July 15, 2009, (*see* Docket No. 9). Thus, State Farm's motion to remand was timely under this statute as only 28 days had elapsed between removal and the motion to remand. The party opposing a motion to remand, that is, the party who removed the action, has the burden of establishing the existence of federal subject matter jurisdiction. *Central Iowa Power Co-op. v. Midwest Independent Transmission System Operator, Inc.,* 561 F.3d 904, 912 (8th Cir.2009). All doubts as to the existence of federal jurisdiction are to be resolved in favor of remand. *Id.; Bates v. Missouri & Northern Arkansas Railroad Co.,* 548 F.3d 634, 638 (8th Cir.2008).

The question presented by State Farm's motion to remand is this: can an action that was not removable at its inception because of the presence of a defendant who is a citizen of the state in which the state court action is pending become removable upon the entering into of an oral settlement agreement with that defendant where, at the time removal is sought, (1) no written settlement agreement has yet been executed by the settling defendant, (2) no amended complaint or other pleading has been filed dismissing the settling defendant, and (3) no order by the state court has been issued concerning the presence or deletion of the settling defendant in the action.

State Farm argues that removal is not proper absent formal dismissal of Bonnie Estes from the lawsuit. State Farm also argues that Valspar's notice of removal was not proper because Bonnie Estes did not join in the notice of removal.

Valspar argues that the fact of State Farm's settlement with Bonnie Estes is sufficient to render removal of this action proper. As to the lack of any formality recognizing Ms. Estes' departure from this lawsuit, Valspar makes two arguments: (1) it is not necessary for the settlement agreement to have been executed or for an order dismissing Ms. Estes from the lawsuit to have been issued; and (2) even if Ms. Estes' presence in the lawsuit is not to be ignored, the court should "realign" her with State Farm and, thus, reach the conclusion that this court has jurisdiction in this matter.

**B. Whether Ms. Estes is Still a Party to This Lawsuit**

Whether the elements of removal jurisdiction have been satisfied is to be determined with reference to federal law. As the Supreme Court has stated:

> The removal statute which is nationwide in its operation, was intended to be uniform in its application, unaffected by local law definition or characterization of the subject matter to which it is to be applied. Hence the Act of Congress must be construed as setting up its own criteria, irrespective of local law, for determining in what instances suits are to be removed from the state to the federal courts.

*Shamrock Oil & Gas Corp.,* 313 U.S. at 104, 61 S.Ct. 868. The Supreme Court has stated that federal law, not state law, determines who is a plaintiff and who is a defendant for purposes of removal jurisdiction. *Chicago, R.I. & P.R. Co. v. Stude,* 346 U.S. 574, 580, 74 S.Ct. 290, 98 L.Ed. 317 (1954). A state court's "procedural provisions cannot control the privilege o removal granted by the federal statute." *Id.*

However, state law does govern substantive rules of decision in a diversity suit, whether that suit is filed with a federal district court initially, or whether the suit is removed to federal court from state court. *See Erie Railroad Co. v. Tomp-*

*kins,* 304 U.S. 64, 77–80, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); 14B *Federal Practice & Procedure,* § 3723, at 564.

■ It is a "cardinal rule" of removal jurisdiction that "only defendants may remove and all defendants must join in the notice of removal." 14B *Federal Practice & Procedure,* § 3723, at 563. Removability is determined on the basis of the record before the court at the time the defendant files the notice of removal. *Id.* at 568–69; *Salem Trust Co. v. Manufacturers' Finance Co.,* 264 U.S. 182, 189–90, 44 S.Ct. 266, 68 L.Ed. 628 (1924).

■ In determining whether diversity of citizenship exists, the court may disregard dispensable parties. *Id.* at 190, 44 S.Ct. 266. Nominal or formal parties may be disregarded by the court for purposes of the rule that all defendants must join in the notice of removal. 14C *Federal Practice & Procedure,* § 3731, at 270 (3d ed. 1998).

The one-year statute of limitations in § 1446(b) is capable of manipulation by plaintiffs wishing to avoid federal jurisdiction, such as the case where a plaintiff settles with a diversity-destroying defendant only after one year from the commencement of the action in state court. 14C *Federal Practice & Procedure,* § 3732, at 344. The fact that the plaintiff may be manipulating the system does not enter into most courts' strict application of the one-year deadline. *Id.*

"Although the requisite notice [under § 1446(b) ] may be communicated in either a formal or informal manner, the communication nevertheless should still be in writing, and oral statements often will not qualify as constituting notice that is provided by an 'other paper' that will trigger removability under the second paragraph of Section 1446(b)." 14C *Federal Practice & Procedure,* § 3732, at 310. "A limited exception to this principle is that a renewed period of removability can be triggered by oral statements made in the courtroom during the course of the action." *Id.* at 310–11.

■ One question presented by the posture of this case is whether Bonnie Estes is to be considered as a party defendant in this matter at the time Valspar removed. "A party whose presence in the action would destroy diversity must be dropped formally as a matter of record to permit removal to federal court. It is insufficient, for example, that service of process simply has not been made on a nondiverse party; the case may not be removed until that party actually has been dismissed from the case." 14B *Federal Practice & Procedure,* § 3723, at 585–87.

Valspar's arguments that the court should disregard Ms. Estes as a party are unavailing. This court must determine its basis for removal jurisdiction on the basis of the state court record at the time of removal. 14B *Federal Practice & Procedure,* § 3723, at 568–69; *Salem Trust Co.,* 264 U.S. at 189–90, 44 S.Ct. 266. At the time Valspar removed, and indeed, at the present, Ms. Estes has never been formally dismissed as a party from the lawsuit. It is clear, furthermore, that under South Dakota state law, even if State Farm had moved to voluntarily dismiss Ms. Estes prior to the time Valspar removed this case, the state court could not have granted State Farm's motion. That is because Valspar had asserted a cross-claim against Ms. Estes and State Farm could not act unilaterally to extinguish Valspar's claim. *Shaull,* 327 N.W.2d at 54; *Schoniger,* 40 S.D. at 35–36, 166 N.W. at 228. The fact that, under the *Pierringer* release State Farm agreed to indemnify Ms. Estes if the jury found against her on Valspar's cross-claim does not obviate or extinguish that cross-claim. Thus, the court rejects Valspar's invitation to ignore Ms. Estes altogether as a party in this case when examining the basis for removal jurisdiction.

This court's conclusion is borne out by the Supreme Court's decision in *Caterpillar, Inc. v. Lewis*, 519 U.S. 61, 117 S.Ct. 467, 136 L.Ed.2d 437 (1996). In that case, a Kentucky plaintiff initiated a personal injury lawsuit in Kentucky state court, alleging state law claims against both a Kentucky defendant and Caterpillar, Inc., a nonresident defendant, thus making the case nonremovable initially. *Id.* at 64–66, 117 S.Ct. 467. Thereafter, the plaintiff's workers' compensation insurer intervened in the action and asserted a subrogation claim against both the nonresident defendant and the Kentucky defendant. *Id.* Thereafter, the plaintiff settled his claim against the Kentucky defendant and, with one day to spare under the one-year deadline of § 1446(b), Caterpillar removed the case to federal district court on the basis of diversity jurisdiction. *Id.*

The plaintiff moved to remand, acknowledging that he had settled his claim with the Kentucky defendant, but arguing that diversity jurisdiction did not exist because the Kentucky defendant had not been formally dismissed from the lawsuit and the worker's compensation insurance company's subrogation claim against the Kentucky defendant remained extant despite the plaintiff's settlement. *Id.* The issue before the Supreme Court was different from the issue presented to this court, but the Court noted that its analysis was premised on the "given" fact that the district court had erred in denying the plaintiff's motion for remand because, in fact, no basis for removal existed when Caterpillar removed the case. *Id.* at 70, 117 S.Ct. 467.[4]

In this case, like the *Caterpillar* case, the settling, resident defendant whose presence destroys complete diversity has not been formally dismissed from this lawsuit. Also like *Caterpillar*, the resident defendant cannot be dismissed because there are claims asserted against it by persons other than the settling plaintiff— in *Caterpillar* it was the workers compensation insurance company, and here it is Valspar itself that has an independent claim. Thus, this court concludes that Bonnie Estes is still a bona fide party to this lawsuit and her presence cannot simply be overlooked for purposes of analyzing diversity removal jurisdiction. *Cf. Stamm v. American Telephone & Telegraph Co.*, 129 F.Supp. 719, 720–21 (W.D.Mo.1955) (court would not ignore presence of resident defendant for purposes of diversity removal jurisdiction where resident defendant was named as a party, but had never been served with the summons and complaint). *See also Universal Ins. Co. v. Hartford Fire Ins. Co.*, 556 F.Supp.2d 68, 69–71 (D.P.R.2008) (no removal allowed without formal dismissal of resident defendant); *Hutton v. Temple University*, 703 F.Supp. 391, 391–92 (E.D.Penn.1989) (same); *Mertan v. E.R. Squibb & Sons, Inc.*, 581 F.Supp. 751, 752 (C.D.Cal.1980) (same).[5]

---

**4.** The issue decided by the Court was whether, once a district court erroneously accepted removal where the necessary diversity of citizenship did *not* exist, could that error be "cured" if the necessary diversity of citizenship materialized prior to the time the district court entered final judgment in the case. *Caterpillar, Inc.*, 519 U.S. at 64, 70, 117 S.Ct. 467. The Court answered the question in the affirmative. *Id.* at 64, 77–78, 117 S.Ct. 467.

**5.** In the *Universal Ins. Co.*, *Hutton*, and *Mertan* cases, the court remanded for lack of complete diversity due to the presence of the settling defendant in the case with no formal dismissal in state court. The court does not rely entirely on these cases in determining State Farm's motion to remand in this case because none of these three cases discuss the argument raised here that the settling defendants, if still parties to the action, must be realigned with the plaintiff for purposes of analyzing diversity. Because that argument *was* raised in this case, the court does not find *Universal Ins. Co.*, *Hutton*, and *Mertan* to be

## C. If Bonnie Estes is Still a Party to This Lawsuit, May This Court Realign the Parties

"Before determining removability under Section 1441(b) on the basis of diversity of citizenship jurisdiction, the district court will realign the parties according to their true interests in the outcome of the litigation, as it would were the case brought in the federal court originally." 14B *Federal Practice & Procedure,* § 3723, pages 606–608. "It will then consider the citizenship of all parties validly joined, and those who should be joined, whether they are described as indispensable, necessary, or proper parties." *Id.* at 608.

"Moreover, in determining whether diversity of citizenship exists for removal jurisdiction purposes, the district court will disregard—as it does in cases originated in a federal court—nominal or formal parties ..." 14B *Federal Practice & Procedure,* § 3723, page 612.

■ The court concludes that, upon State Farm and Ms. Estes entering into the *Pierringer* release, Ms. Estes became a *de facto* plaintiff in this matter. State Farm and Ms. Estes both have the same vested interest in now minimizing any liability of Ms. Estes and maximizing any liability of Valspar. State Farm's potential offset as a result of the jury's verdict and its potential liability to indemnify Ms. Estes both inspire State Farm to maximize Valspar's role in the events leading to the fire at Ramona Policky's home, and to minimize Ms. Estes' role in those events. *See Mancari v. AC & S Co.,* 683 F.Supp. 91, 93 (D.Del.1988) (when plaintiff settles with resident defendant and resident defendant remains in lawsuit only for purpose of determining cross-claims, these settling defendants should be realigned).

If Ms. Estes is realigned as a party plaintiff, the fact that Ms. Estes is a citizen of the state of South Dakota no longer presents an impediment to removal under 28 U.S.C. § 1441(b). Nor is her failure to join in the notice of removal an impediment to removal, for the judicially-made rule is that all defendants must join in removal. The rule does not extend to plaintiffs or to parties who are *de facto* plaintiffs such as Ms. Estes. However, realigning Ms. Estes as a party plaintiff does not finally answer the question as to whether this court should exercise removal jurisdiction over this case. There remains one issue to address.

## D. Whether the Requirement Under § 1446(b) of the Receipt of a Paper Has Been Satisfied

■ Even realigning Ms. Estes as a plaintiff, the parties are in agreement that the complaint originally filed by State Farm was not removable because of her presence, and the fact that she was a *bona fide* defendant at the time and also a citizen of South Dakota. Therefore, under § 1441(b), neither Ms. Estes nor Valspar could have removed. Accordingly, since the case was not removable at its inception, whether it can now be removed is governed by 28 U.S.C. § 1446(b). Although quoted above, the governing language of this section deserves repeating here:

> If the case stated by the initial pleading is not removable, a notice of removal may be filed within thirty days *after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper* from which it may first be ascertained that the case is one which is or has become removable, except that a case may not be removed on the basis of jurisdiction conferred by section 1332 of this title [diversity jurisdiction] more

dispositive but goes on to address the realignment argument.

than 1 year after commencement of the action.

*See* 28 U.S.C. § 1446(b).

State Farm argues that, because Valspar received no "amended pleading, motion, order or other paper" prior to filing its notice of removal, removal of this case is not proper under § 1446(b). Valspar urges the court to look at the reality of the settlement and disregard the "formality" of receiving an actual document commemorating the settlement.

Before embarking on the discussion of the merits of this issue, the court takes note of the realities of the situation faced by Valspar. The one-year deadline for removing this case from state court was set to run on June 26, 2009. The settlement between State Farm and Ms. Estes was reached on or shortly after June 9, 2009. Valspar had to act to remove this case prior to June 26, 2009, or be forever barred from removing. *See* 28 U.S.C. § 1446(b). Valspar did not have the luxury of waiting to receive a written copy of the agreement, which would have satisfied the requirement of § 1446(b) of the receipt of some kind of document, because that document might not materialize until after the June 26, 2009, removal deadline. As it turns out, the settlement agreement in fact was not executed until July 1, 2009.

Nor is State Farm's motive in this sequence of events material or relevant. State Farm may have been motivated to delay the drafting and execution of the release with Ms. Estes so as to prevent removal. Then again, timing of the execution of the release may have been totally innocent and explainable without reference to the removal deadline. It is certainly not unusual for the final drafting and execution of a settlement agreement to take longer than a month following the reaching of an oral agreement. In either case, the reasons or motive behind the delay are irrelevant.

Because orders remanding a case back to state court are not appealable, there is a frustrating lack of authority from appellate courts addressing the interpretation of the document-received requirement in § 1446(b). At the outset, the court notes that two categories of cases must be distinguished on the facts from the facts of the present case.

First, as the Wright and Miller treatise on federal civil procedure points out, one exception to the document-received requirement has been carved out by courts to cover the situation where the plaintiff voluntarily dismisses claims against a resident defendant orally while the case is actually being tried in a state court. 14C *Federal Practice & Procedure,* § 3732, page 310–11. Thus, removal has been allowed on the basis of the plaintiff's oral relinquishment of claims when the case is in the midst of a trial. *See e.g. Powers v. Chesapeake & Ohio Ry., Co.,* 169 U.S. 92, 98–102, 18 S.Ct. 264, 42 L.Ed. 673 (1898) (allowing removal on basis of diversity where plaintiff "discontinued" claims against resident defendants when his case was called for trial in state court); *Mancari v. AC & S Co., Inc.,* 683 F.Supp. 91, 92–95 (D.Del.1988) (where plaintiff settled with resident defendants in the midst of trial, the court stated that "[i]t is not required that dismissal of the nondiverse defendants be in writing or be formalized."); *First Nat'l Bank v. Johnson & Johnson,* 455 F.Supp. 361, 362 and 362 n. 1 (E.D.Ark.1978) (stating that, where plaintiff moved to dismiss claim against resident defendant immediately before submission of the case to the jury in state court, the oral motion of the plaintiff and the oral order of the state court granting the motion was sufficient to satisfy § 1446(b) although no document was created). Presumably, this exception to the document-received requirement was created due to the exigencies of trial: if strict

compliance with the requirement of a document being received were enforced, defendants could never remove a case during trial because the case would often proceed to a verdict before the plaintiff or the court could excuse themselves from the trial long enough to create a document.

The second category of cases the court distinguishes are cases where the court allowed removal without discussing the document-received requirement of § 1446(b), but the court's discussion of the facts demonstrates that there clearly was a document received by the defendant in the case. *See e.g. Estate of Martineau v. ARCO Chemical Co.*, 203 F.3d 904, 909–10 (5th Cir.2000) (allowing removal where removing defendant received a document in the form of a letter settlement agreement and filed notice to remove thereafter); *Ratcliff v. Fibreboard Corp.*, 819 F.Supp. 584, 585–87 (W.D.Tex.1992) (allowing removal where removing defendant received five letter agreements memorializing the settlements between plaintiffs and resident defendants). *Cf. Central Iowa Agri–Systems v. Old Heritage Advertising and Publishers, Inc.*, 727 F.Supp. 1304, 1305 (S.D.Iowa 1989) (holding that plaintiff's demand letter establishing the amount in controversy was an "other paper" under § 1446(b) establishing defendant's right to remove on the basis of diversity jurisdiction).

In interpreting § 1446(b), courts which have discussed the document-received requirement have concluded that the document referenced by that statute must be a document generated within the state court litigation itself. *Johansen v. Employee Benefit Claims, Inc.*, 668 F.Supp. 1294, 1296–97 (D.Minn.1987); *Putterman v. Daveler*, 169 F.Supp. 125, 129 (D.Del.1958).

There are three cases the court discusses at some length because they do not fit neatly into one of the two categories of cases cited above that are distinguishable.

In *Chohlis v. Cessna Aircraft Co.*, 760 F.2d 901 (8th Cir.1985), a plaintiff brought a wrongful death action against a pilot and the manufacturer of the plane he was piloting. *Id.* at 903. The plaintiff and the pilot shared the same state citizenship. *Id.* at 903 n. 2. When the plaintiff settled her claim with the pilot, the plane manufacturer removed the action to federal court. *Id.* at 903. On appeal, the plaintiff argued that the district court erred in taking the case because the pilot had not been dismissed from the state court suit at the time of removal. *Id.* at 903 n. 2. The Eighth Circuit dispensed with this argument in a single foot note, stating that the "question [as to removal] was properly decided by a magistrate, who concluded that a settlement between [the plaintiff] and the pilot's estate was final enough to support removal." *Id.* Although the opinion reveals that the pilot was never dismissed from the state court action prior to removal, the opinion never discussed whether there was any document received by Cessna memorializing the settlement or what facts the magistrate judge relied upon in determining the settlement was "final enough" to allow removal. *Id.* Thus, the *Chohlis* opinion, though a rare appellate opinion and one that is binding on this court, is not conclusive because there simply are not enough facts revealed in the opinion to determine if it is applicable to the precise issue in this case.

Likewise, the case of *Gable v. Chicago, M., St. P. & P.R. Co.*, 8 F.Supp. 944 (W.D.Mo.1934), is unilluminating due to the opinion's lack of specificity on the facts. In that case, the plaintiff entered into a settlement with the resident defendant, leading the nonresident defendant to remove the case prior to the formal dismissal of the resident defendant from the state action. *Id.* at 945–46. The plaintiff moved to remand on the basis that the resident defendant was still a party. *Id.*

The court declined to remand, noting that the cause of action stated against the resident defendant had been extinguished, regardless of whether that defendant had been formally dismissed. *Id.* The opinion never reveals whether a document of any kind was received by the removing defendant, thus triggering the right to remove under § 1446(b). *Id.* at 945–47. Indeed, the opinion dates from 1934 and never recites the precise language of the removal statute, so it is difficult to tell whether the 1934 predecessor of § 1446(b) is similar to the current statute. *Id.*

Finally, Valspar cites the case of *Bumgardner v. Combustion Engineering, Inc.,* 432 F.Supp. 1289 (D.S.C.1977), cited by the *Chohlis* case in its footnote. In the *Bumgardner* case, the plaintiff and a resident defendant secretly settled their claims without notifying the other parties. *Id.* at 1290–91. That resident defendant had asserted cross-claims against the nonresident defendants. *Id.* At a subsequent deposition of a key witness, the attorney for the plaintiff gave the attorney for the resident defendant a handwritten list of questions to ask the deponent. *Id.* During the course of the deposition, the attorneys for the nonresident defendants became suspicious because the questions being asked by the resident defendant were so favorable to the plaintiff. *Id.* They confronted the attorney for the resident defendant and he revealed the existence of the settlement agreement and showed the other defense attorneys the list of questions that the plaintiff's attorney had given him. *Id.* The nonresident defendants immediately petitioned for removal. *Id.* at 1291. The *Bumgardner* case does not discuss the document-received requirement of § 1446(b), although the factual recitation makes clear that the removing defendants did receive a document—the handwritten list of questions from the plaintiff's attorney. *Id.* at 1290–92. The holding of the *Bumgardner* court, relying on the earlier

*Gable* decision, was that the case was removable upon the settlement, regardless of whether the resident defendant had been formally dismissed from the state action at the time of removal. *Id.*

The holdings of the *Bumgardner, Chohlis,* and *Gable* cases are unexceptional and do not dictate the result in this case. They stand for the proposition that removal can still be had even if the settling, resident defendant has not been formally dismissed from the case. Although these cases do not discuss realignment, as can be seen from the court's discussion in subsections B and C of this report, the failure to formally dismiss a settling resident defendant does not pose an impediment to removal because that defendant can and should be realigned with the plaintiff or realigned as a third-party defendant (in which case citizenship is not taken into account). These three cases do not speak to the requirement of § 1446(b) that a document of some kind must be received by the removing defendant in order to trigger the right to remove. Because of the paucity of facts recited in *Chohlis* and *Gable,* the cases cannot be said to stand for the proposition that the document-received requirement of § 1446(b) can be waived (except, as has been seen in the above discussion, when the basis for removal comes about during a state court trial).

This court concludes that State Farm's motion to remand must be granted. The court bases this conclusion on the following factors. The right of removal is wholly statutory and must, therefore, depend on an interpretation of the words of the statute. 14B *Federal Practice & Procedure,* § 3721, pages 285–86. The statute— § 1446(b)—requires that a document be received by the removing defendant before the right to remove is triggered. *See* 28 U.S.C. § 1446(b). Also, the statute is to

be strictly construed due to comity concerns because the right to remove is in derogation of the power of state courts to hear cases within their jurisdiction. *Shamrock Oil & Gas Corp.,* 313 U.S. at 109, 61 S.Ct. 868.

Finally, the burden is on Valspar as the removing party to unequivocally demonstrate that this court has removal jurisdiction. *Central Iowa Power Coop.,* 561 F.3d at 912. All doubts as to whether removal jurisdiction exists are to be resolved in favor of remand. *Id.; Bates,* 548 F.3d at 638. Valspar has demonstrated that a case can be removed prior to formal dismissal of a settling defendant through realignment. However, Valspar has failed to cite the court to a single case where a court clearly and unequivocally held that the document-received requirement of § 1446(b) was not met, and was waived by the federal court, where removal took place in a context outside of trial in the state court. Based on the above discussion, then, this court respectfully recommends that this case be remanded back to South Dakota state court.

### E. Valspar Did Not Waive Its Right to Remove and There is No Federal Question Jurisdiction

As a final matter, and for the sake of completeness for the review of this report and recommendation by the district court, this magistrate judge addresses one additional issue not raised by the parties. "A state court defendant may lose or waive the right to remove a case to a federal court by taking some substantial offensive or defensive action in the state court action indicating a willingness to litigate in that tribunal before filing a notice of removal with the federal court, such as asserting a counterclaim or engaging in pretrial discovery." 14B *Federal Practice & Procedure,* § 3721, at 363–65.

 Here, Valspar filed a motion for summary judgment in state court prior to removal. That might ordinarily act as a waiver by Valspar of its right to remove, particularly if Valspar had awaited resolution of its motion by the state court prior to removing. *Id.* However, here, although Valspar filed a motion for summary judgment in state court, that act did not operate as a waiver of Valspar's right to remove because that motion was filed *before* the basis for removal came into existence. Valspar could not waive a right that it did not yet have at the time it filed the summary judgment motion.

 Also, although one of the bases of Valspar's summary judgment motion in state court was federal preemption, this court may not take jurisdiction of this case on the basis of federal question jurisdiction under 28 U.S.C. § 1331. It is well-settled that "a federal defense, including a preemption defense, does not provide a basis for removal, 'even if the defense is anticipated in the plaintiff's complaint, and even if both parties concede that the federal defense is the only question truly at issue in the case.'" *Central Iowa Power Co-op. v. Midwest Independent Transmission System Operator, Inc.,* 561 F.3d 904, 912 (8th Cir.2009) (quoting *Caterpillar Inc. v. Williams,* 482 U.S. 386, 393, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987)). That is because removal on the basis of federal question jurisdiction must be judged from the face of the plaintiff's properly pleaded complaint. *Id.* (citing *Caterpillar, Inc.,* 482 U.S. at 392, 107 S.Ct. 2425). If no federal question jurisdiction appears on the face of the complaint, removal jurisdiction on the basis of the presence of a federal question will not be available. *Id.*

State Farm's complaint reveals no federal question. Thus, the fact that Valspar is asserting a federal preemption defense

does not give rise to removal on the basis of a federal question. *Id.*

## CONCLUSION

Based on the foregoing discussion, this court recommends that State Farm's motion to remand this case back to South Dakota state court [Docket No. 9] be granted.

## NOTICE TO PARTIES

The parties have ten (10) days after service of this report and recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1)(B), unless an extension of time for good cause is obtained. *See also* Fed. R. Civ. P. 72(b)(2). Failure to file timely objections will result in the waiver of the right to appeal questions of fact. Objections must be timely and specific in order to require *de novo* review by the district court. *See Thompson v. Nix,* 897 F.2d 356 (8th Cir.1990); *Nash v. Black,* 781 F.2d 665 (8th Cir.1986).

## REPORT AND RECOMMENDATION ON DEFENDANT'S OBJECTIONS TO RECOMMENDED GRANT OF PLAINTIFF'S MOTION TO REMAND [DOCKET 9, 17]

### INTRODUCTION

This matter is before the court on the Notice of Removal filed by defendant The Valspar Corporation, Inc. (hereinafter "Valspar"). Previously, this court issued a report and recommendation that plaintiff State Farm Fire and Casualty Company's (hereinafter "State Farm") motion to remand this matter back to state court [Docket No. 9] should be granted. Thereafter, Valspar filed objections which included the assertion of new facts in re-sistance to remand. [Docket No. 17]. Because the objections contained new facts, and at Valspar's request, the district court, the Honorable Jeffrey L. Viken, referred Valspar's objections to this magistrate judge for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). *See* Docket No. 19.

### FACTS

#### A. Proceedings in State Court

On June 28, 2005, Bonnie Estes, a resident of Rapid City, South Dakota, helped her neighbor, Ramona Policky, stain the deck attached to Ms. Policky's home, using a product manufactured by Valspar. Ms. Estes allegedly left some rags and/or brushes contaminated with the Valspar product sealed in plastic bags on Ms. Policky's deck. The bag ignited, starting a fire which caused "hundreds of thousands of dollars"[1] in damage to Ms. Policky's real and personal property, which was insured by State Farm.

State Farm paid Ms. Policky's claim under her insurance policy with it, and then brought this subrogation action against Ms. Estes and Valspar in South Dakota state court for the Seventh Judicial Circuit on June 26, 2008. State Farm alleged a single claim of negligence against Ms. Estes. Against Valspar, State Farm asserted claims of negligence in failing to warn, breach of the warranties of merchantability and fitness for a particular purpose, and strict liability for failure to warn.

In Valspar's notice of removal, State Farm is alleged to be a citizen of the state of Illinois, the state of its incorporation,

---

1. The allegation as to the amount of damage caused by the fire is taken from State Farm's complaint against the defendants filed in state court. For purposes of the instant motion, no party has taken issue with this representation. Therefore, for purposes of determining the court's jurisdiction under 28 U.S.C. § 1332, the court assumes that the amount in controversy element has been met.

and is alleged to have its principal place of business in Illinois as well. *See* Docket No. 1. Valspar alleges that it is a citizen of Delaware, the state of its incorporation, and also of Minnesota, the place of its principal place of business. *Id.* In opposing removal, State Farm does not deny these allegations as to citizenship, so the court takes them to be true for purposes of resolving the issues raised by State Farm's motion to remand and Valspar's objections to this court's recommendation that the motion be granted.

Ms. Estes answered State Farm's complaint in state court, denying liability and asserting a cross claim against Valspar. Valspar answered State Farm's complaint, also denying liability and also asserting a cross claim against Ms. Estes.

The parties thereafter engaged in various discovery, including the taking of Ms. Estes' deposition, the admission of various attorneys *pro hac vice*, and the securing of a protection order from the state court for various matters asserted by Valspar to be proprietary and confidential.

On June 1, 2009, Valspar moved for summary judgment against State Farm in the state court. One of the grounds asserted by Valspar in favor of summary judgment against State Farm is that federal law preempts State Farm's state law claims against Valspar. No ruling by the

state court appears of record in these proceedings.[2]

### B. The Settlement Between State Farm and Bonnie Estes

On June 9, 2009, a mediation between all three parties was had. Neither Valspar nor Bonnie Estes settled their cross-claims against one another, and State Farm did not settle its claim against Valspar. However, State Farm did enter into a *Pierringer* release with Ms. Estes.[3] However, Ms. Estes was never dismissed from the state court action as a result of the release between State Farm and Ms. Estes. Indeed, under existing South Dakota law, it is doubtful that plaintiff and Ms. Estes could have obtained an order of the state court dismissing Ms. Estes from the lawsuit due to the existing cross claims between Ms. Estes and Valspar. *See Shaull v. Hart*, 327 N.W.2d 50, 54 (S.D.1982) (holding that the trial court did not err in refusing to dismiss defendant with whom plaintiff had settled because the remaining defendant had asserted a cross-claim and dismissal could have deprived the remaining defendant of the opportunity to have the jury apportion fault between itself and the settling defendant); *Schoniger v. Logan*, 40 S.D. 30, 166 N.W. 226 (1918) (plaintiff has no right to voluntary dismissal where defendant has asserted a counter-

---

**2.** Although one of the bases of Valspar's summary judgment motion in state court was federal preemption, this court may not take jurisdiction of this case on the basis of federal question jurisdiction under 28 U.S.C. § 1331. It is well-settled that "a federal defense, including a preemption defense, does not provide a basis for removal, 'even if the defense is anticipated in the plaintiff's complaint, and even if both parties concede that the federal defense is the only question truly at issue in the case.'" *Central Iowa Power Co-op. v. Midwest Independent Transmission System Operator, Inc.*, 561 F.3d 904, 912 (8th Cir. 2009) (quoting *Caterpillar Inc. v. Williams*,

482 U.S. 386, 393, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987)). That is because removal on the basis of federal question jurisdiction must be judged from the face of the plaintiff's properly pleaded complaint. *Id.* (citing *Caterpillar, Inc.*, 482 U.S. at 392, 107 S.Ct. 2425). If no federal question jurisdiction appears on the face of the complaint, removal jurisdiction on the basis of the presence of a federal question is not available. *Id.*

**3.** The name of the release derives from the decision in *Pierringer v. Hoger*, 21 Wis.2d 182, 124 N.W.2d 106 (Wis.1963).

claim or other valid claim to affirmative relief).

The release between State Farm and Ms. Estes contained the following provisions. Ms. Estes and her insurer agreed to pay State Farm $250,000. *See* Docket No. 10–2. In return, State Farm agreed to release both Ms. Estes and her insurer from all liability to State Farm and Ms. Policky as a result of the June 28, 2005, fire. *Id.* In addition, State Farm agreed to indemnify Ms. Estes for any loss, damage, or expense occasioned by any claims asserted against Ms. Estes by Valspar or any third party as a result of the fire. *Id.* Finally, State Farm agreed that any damages it recovered against Valspar for the fire would be off-set by the $250,000 paid to State Farm by Ms. Estes, or by the sum the jury determined to be Ms. Estes' *pro rata* share of the damages, whichever sum was larger. *Id.*

Late on the afternoon that the mediation was held, June 9, 2009, counsel for Valspar e-mailed counsel for Ms. Estes, apologizing for having left the mediation without saying good-bye to Ms. Estes and her lawyer. *See* Docket No. 18–2. Ms. Estes' lawyer responded as follows on the morning of June 10: "No problem. I enjoyed working with you on this case. I will be interested to see how it all turns out." *Id.*

That afternoon, June 10, counsel for Valspar e-mailed counsel for both State Farm and counsel for Ms. Estes, asking: "Gentlemen: Could you please confirm whether a settlement was reached between State Farm and Ms. Estes and, if so, what the amount was?" *See* Docket No. 18–3. No written response, by e-mail or otherwise, was given by either addressee of this e-mail.

Instead, on June 11, 2009, State Farm's counsel and Valspar's counsel spoke by telephone. In this telephone conversation, State Farm confirmed that it had settled its case against Ms. Estes pursuant to the above-discussed terms.

The written memorialization of this release between State Farm and Ms. Estes was not signed until July 1, 2009. *See* Docket No. 10–2. Prior to the execution of the release between Ms. Estes and State Farm, Valspar removed the action from state court to this court on June 17, 2009, alleging that there was complete diversity of citizenship among the parties and that Ms. Estes' citizenship was no longer of any moment because State Farm had settled with her. *See* Docket No. 1.

State Farm moved to remand this matter back to state court on July 15, 2009. *See* Docket No. 9. Valspar resisted the motion, arguing that removal was proper. This court issued a report and recommendation that State Farm's motion be granted because Valspar had not received a "copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable" as required by 28 U.S.C. § 1446(b). *See* Docket No. 16.

In the original briefings on State Farm's motion, neither party mentioned the above e-mail received by Valspar from Ms. Estes' lawyer on June 10, 2009, as an "other paper" which would support removal. This is because, although State Farm argued that the absence of the receipt of an "other paper" justified remand, that argument was raised only in State Farm's reply brief. Valspar did not seek permission to file a sur-reply brief, so it never responded to this argument.

Valspar now objects to the remand of this case and urges the court to hold that the receipt of the June 10, 2009, e-mail suffices to satisfy the "other paper" requirement of § 1446(b). State Farm opposes Valspar's objections.

## DISCUSSION

### A. Whether It is Permissible to Consider New Evidence

■ State Farm objects to Valspar's proffer of the June 10, 2009, e-mail from Ms. Estes' counsel, arguing that Valspar should have argued the existence of the e-mail prior to this court issuing its first report and recommendation. However, as already noted, State Farm itself never raised the "other paper" argument until its reply brief. The fact that the issue was not raised in State Farm's initial brief is sufficient good cause excusing Valspar's failure to address that argument in its response in opposition to State Farm's motion. Moreover, 28 U.S.C. § 636 specifically contemplates the receipt of additional evidence after the filing of a magistrate judge's report and recommendation in some cases.

■ A magistrate judge's authority to decide motions under § 636 is divided into two basic categories of pre-trial motions: dispositive motions and nondispositive motions. *See* 28 U.S.C. § 636(b)(1)(A) and (B). As to nondispositive motions, a magistrate judge may decide such a motion outright, subject to an appeal to the district court where the standard of review is "clearly erroneous or contrary to law." *Id.* at (A). Magistrate judges may also issue opinions on dispositive motions in civil and criminal cases, but they cannot decide such motions outright. *Id.* at (B). Instead, a magistrate judge to whom a dispositive motion is referred must proceed by filing a report and recommendation to the district court for the disposition of the motion. *Id.* As to a magistrate judge's report and recommendation on a dispositive motion, the standard of review by the district court is *de novo*. *See* 28 U.S.C. § 636(b)(1)(C). In addition, after the filing of a report and recommendation, the statute specifically provides that the district court may receive further evidence on the motion and may recommit the matter to the magistrate judge. *Id.*

Therefore, based on the above provisions and the remand order of the district court upon receipt of Valspar's objections, this court is specifically authorized to consider new evidence in the form of the June 10, 2009, e-mail. State Farm's objection to the consideration of the e-mail is overruled.

### B. Whether Removal Was Proper Considering the E-mail

#### 1. General Principles Applicable to Removal

■ The court will not recap the entire discussion from its prior report and recommendation concerning the law of removal and remand. Instead, that discussion is incorporated by reference herein. *See* Docket No. 16. A few rules governing this area of the law are worth repeating here, however. A federal district court's removal jurisdiction in a case founded on diversity jurisdiction is more narrow than the court's original diversity jurisdiction in cases filed in federal court in the first instance. *Compare* 28 U.S.C. § 1332, *with* 28 U.S.C. §§ 1441, and 1446(b).

For example, a district court may not accept removal of a case in which one of the defendants is a resident of the state in which the district court sits, even though such a case could have permissibly been filed in federal court in the first instance. *See* 28 U.S.C. § 1441(a) and (b).[4] Also,

---

4. The difference between original diversity jurisdiction and removal jurisdiction based on diversity is explained by the policy supporting removal jurisdiction in the first place: removal jurisdiction was created to "protect nonresidents from the local prejudices of state courts." 14B Charles A. Wright, Arthur R. Miller, & Edward H. Cooper, *Federal Practice & Procedure*, § 3721, 289 (3d ed. 1998). Thus, a nonresident defendant is entitled to remove his case to federal court, assuming the basis for diversity jurisdiction is present.

even though all the requirements for diversity have been met, a case may not be removed to federal court more than one year after it was filed in state court. *See* 28 U.S.C. § 1446(b).

▪ Because the right to remove is in derogation of the authority of state courts to decide cases filed with them, and because the right to remove is entirely statutory, the removal statutes are to be strictly construed. *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 109, 61 S.Ct. 868, 85 L.Ed. 1214 (1941); 14B Charles A. Wright, Arthur R. Miller, & Edward H. Cooper, *Federal Practice & Procedure*, § 3721, 285–86 (3d ed. 1998). The party opposing a motion to remand—here, Valspar—has the burden of establishing the existence of federal subject matter jurisdiction. *Central Iowa Power Co-op. v. Midwest Independent Transmission System Operator, Inc.*, 561 F.3d 904, 912 (8th Cir.2009). All doubts as to the existence of federal jurisdiction are to be resolved in favor of remand. *Id.*; *Bates v. Missouri & Northern Arkansas Railroad Co.*, 548 F.3d 634, 638 (8th Cir.2008).

First, it is helpful to clarify what is and what is not in dispute in this case. Neither party disputes that Ms. Estes and State Farm reached an agreement resolving State Farm's claims against Ms. Estes on June 9, 2009, although this agreement remained an oral agreement until July 1, 2009. This court so found in its original report and recommendation and neither party objected to that portion of the court's opinion.

Neither party objected to this court's conclusion that complete diversity exists in this case through the realignment of Ms. Estes as a party plaintiff post-settlement. Also, neither party objected to this court's conclusion that removal was proper even if

Ms. Estes had not been formally dismissed from the lawsuit. Thus, these issues are not in dispute either.

What was placed in dispute by Valspar's objections are the following. First, whether a written document must be received establishing the basis for removal prior to a case being removed. Second, if receipt of such a written document is required, whether the June 10, 2009, e-mail from Ms. Estes' counsel to Valspar's counsel satisfies this requirement.

## 2. Whether Receipt of a Written Document is Required

The presence of Ms. Estes, a resident of South Dakota, as a party defendant at the inception of this law suit rendered the case unremovable initially. *See* 28 U.S.C. § 1441(a). Accordingly, since the case was not removable at its inception, whether it can now be removed is governed by 28 U.S.C. § 1446(b). That provision states as follows:

> If the case stated by the initial pleading is not removable, a notice of removal may be filed within thirty days *after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper* from which it may first be ascertained that the case is one which is or has become removable, except that a case may not be removed on the basis of jurisdiction conferred by section 1332 of this title [diversity jurisdiction] more than 1 year after commencement of the action.

*See* 28 U.S.C. § 1446(b) (emphasis supplied).

State Farm argues that, because Valspar received no "amended pleading, mo-

---

A defendant sued in state court in his own home state is not in danger of being affected by xenophobic prejudices, and, thus, Congress did not provide removal jurisdiction for such defendants. *Id.*

tion, order or other paper" prior to filing its notice of removal, removal of this case is not proper under § 1446(b). Valspar urges the court to look at the reality of the settlement and disregard the "formality" of receiving an actual document commemorating the settlement.

Before embarking on the discussion of the merits of this issue, the court takes note of the realities of the situation faced by Valspar. The one-year deadline for removing this case from state court was set to run on June 26, 2009. The settlement between State Farm and Ms. Estes was reached on or shortly after June 9, 2009. Valspar had to act to remove this case prior to June 26, 2009, or be forever barred from removing. *See* 28 U.S.C. § 1446(b). The settlement agreement between State Farm and Ms. Estes was not executed until July 1, 2009.

However, the court also notes that State Farm's motive in this sequence of events is not material or relevant. State Farm may have been motivated to delay the drafting and execution of the release with Ms. Estes so as to prevent removal (it protests that it was not). Then again, timing of the execution of the release may have been totally innocent and explainable without reference to the removal deadline. It is certainly not unusual for the final drafting and execution of a settlement agreement to take longer than a month following the reaching of an oral agreement. In either case, the reasons or motive behind the delay are irrelevant. The court also notes that, if State Farm *were* motivated to prevent removal, it could simply have scheduled the mediation for after the one-year deadline and ensured that removal could not take place.

Because orders remanding a case back to state court are not appealable, there is a frustrating lack of authority from appellate courts addressing the interpretation of the document-received requirement in § 1446(b). At the outset, the court notes that two categories of cases must be distinguished on their facts from the facts of the present case.

First, as the Wright and Miller treatise on federal civil procedure points out, one exception to the document-received requirement has been carved out by courts to cover the situation where the plaintiff voluntarily dismisses claims against a resident defendant orally while the case is actually being tried in a state court. 14C *Federal Practice & Procedure,* § 3732, page 310–11. Thus, removal has been allowed on the basis of the plaintiff's oral relinquishment of claims when the case is in the midst of a trial. *See e.g. Powers v. Chesapeake & Ohio Ry., Co.,* 169 U.S. 92, 98–102, 18 S.Ct. 264, 42 L.Ed. 673 (1898) (allowing removal on basis of diversity where plaintiff "discontinued" claims against resident defendants when his case was called for trial in state court); *Mancari v. AC & S Co., Inc.,* 683 F.Supp. 91, 92–95 (D.Del.1988) (where plaintiff settled with resident defendants in the midst of trial, the court stated that "[i]t is not required that dismissal of the nondiverse defendants be in writing or be formalized."); *First Nat'l Bank v. Johnson & Johnson,* 455 F.Supp. 361, 362 and 362 n. 1 (E.D.Ark.1978) (stating that, where plaintiff moved to dismiss claim against resident defendant immediately before submission of the case to the jury in state court, the oral motion of the plaintiff and the oral order of the state court granting the motion was sufficient to satisfy § 1446(b) although no document was created). Presumably, this exception to the document-received requirement was created due to the exigencies of trial: if strict compliance with the requirement of a document being received were enforced in the context of a trial, defendants could never remove a case during trial because the case would often proceed to a verdict be-

fore the plaintiff or the court could excuse themselves from the trial long enough to create a document.

The case of *Heniford v. American Motors Sales Corp.*, 471 F.Supp. 328, 332 (D.S.C.1979), cited by Valspar in its objections, falls into this first category of distinguishable cases because the case became removable during trial in the state court. *Id.* Therefore, the court does not rely on *Heniford* for the proposition that the document-received requirement may be waived if a case becomes removable outside of the trial context.[5] As has already been established, cases where removal becomes apparent during the state court trial itself are an exception to the document-received requirement.

The second category of cases the court distinguishes are cases where the court allowed removal without discussing the document-received requirement of § 1446(b), but the court's discussion of the facts demonstrates that there clearly was a document received by the defendant in the case. *See e.g. Estate of Martineau v. ARCO Chemical Co.*, 203 F.3d 904, 909–10 (5th Cir.2000) (allowing removal where removing defendant received a document in the form of a letter settlement agreement and filed notice to remove thereafter); *Ratcliff v. Fibreboard Corp.*, 819 F.Supp. 584, 585–87 (W.D.Tex.1992) (allowing removal where removing defendant received five letter agreements memorializing the settlements between plaintiffs and resident defendants). *Cf. Central Iowa Agri–Systems v. Old Heritage Advertising and Publishers, Inc.*, 727 F.Supp. 1304, 1305 (S.D.Iowa 1989) (holding that plaintiff's demand letter establishing the amount in controversy was an "other paper" under § 1446(b) establishing defendant's right to remove on the basis of diversity jurisdiction).

In interpreting § 1446(b), courts which have discussed the document-received requirement have concluded that the document referenced by that statute must be a document generated within the state court litigation itself. *Johansen v. Employee Benefit Claims, Inc.*, 668 F.Supp. 1294, 1296–97 (D.Minn.1987); *Putterman v. Daveler*, 169 F.Supp. 125, 129 (D.Del.1958).

There are three other cases this court discusses at some length because they do not fit neatly into one of the two categories of cases cited above that are distinguishable. In these cases, "all roads lead to Rome" in the sense that each of the cases relies on a 1934 case from the Western District of Missouri as authority, *Gable v. Chicago, M., St. P. & P.R. Co.*, 8 F.Supp. 944 (W.D.Mo.1934). Thus, discussion of the *Gable* case is addressed first.

In *Gable*, the plaintiff entered into a settlement with the resident defendant, leading the nonresident defendant to remove the case prior to the formal dismissal of the resident defendant from the state action. *Id.* at 945–46. The plaintiff moved to remand on the basis that the resident defendant was still a party. *Id.* The

---

5. To the extent the *Heniford* opinion may be read to dispense with the document-received requirement in all cases, the opinion is on shaky ground. The *Heniford* court cited *Bumgardner*, discussed below, *Gregory v. West Virginia Pulp & Paper Co.*, 112 F.Supp. 8, 10 (E.D.N.C.1953); and *Kulbeth v. Woolnought*, 324 F.Supp. 908 (S.D.Tex.1971), as cases dispensing with the document-received requirement. *See Heniford*, 471 F.Supp. at 335. The facts recited in the *Gregory* case clearly show that a document *was* received in the form of a copy an affidavit, a copy of a deed, and an amended petition in the state court action naming the now-diverse parties as the parties to the law suit. *Gregory*, 112 F.Supp. at 9–10. The *Kulbeth* case is inapposite as it concerns a case that was removable initially, and it also reveals that a document was received—a state court petition. *Kulbeth*, 324 F.Supp. at 909–11.

court declined to remand, noting that the cause of action stated against the resident defendant had been extinguished, regardless of whether that defendant had been formally dismissed. *Id.* The opinion never reveals whether a document of any kind was received by the removing defendant, thus triggering the right to remove under § 1446(b). *Id.* at 945–47.

Importantly, the *Gable* opinion dates from 1934 and never recites the precise language of the removal statute, so it is difficult to tell whether the 1934 predecessor of § 1446(b) is similar to the current statute. *Id.* It most assuredly is not.

Attached as an appendix to this opinion are the removal statutes that were in effect in 1934, codified then at 28 U.S.C. §§ 71–83. Under those statutes, which would have been in effect when the *Gable* decision was made, removal in diversity cases was to be made prior to the time an answer was filed in the state court action. *See* Appendix, 28 U.S.C. § 72. The only exception was if a defendant could prove through affidavit that he was unable "from prejudice or local influence" to "obtain justice in the state court," in which case the case could be removed after the time for filing an answer had passed. *Id.* There is no mention whatsoever in these 1934 removal statutes of the requirement that the defendant receive a document evidencing the right to remove prior to removing a case. *See* Appendix. This was because the great majority of cases were required to be removed at the beginning of the lawsuit suit, so the basis for removal would have had to have been evident from the plaintiff's complaint or petition. *Id.* The exception, removal because of local prejudice, would not have been evident in any kind of amended pleading or document, so there was no document-received requirement for this category of post-answer removals. *Id.* The contents of these 1934 removal statutes reveal that no modern court interpreting the current statute, 28 U.S.C. § 1446(b), should rely on the *Gable* decision for authority.

However, that is precisely what appears to have occurred in at least two other cases from the modern era. In *Chohlis v. Cessna Aircraft Co.*, 760 F.2d 901 (8th Cir.1985), a plaintiff brought a wrongful death action against a pilot and the manufacturer of the plane he was piloting. *Id.* at 903. The plaintiff and the pilot were citizens of the same state, destroying diversity jurisdiction. *Id.* at 903 n. 2.

When the plaintiff settled her claim with the pilot, the plane manufacturer removed the action to federal court. *Id.* at 903. On appeal, the plaintiff argued that the district court erred in taking the case because the pilot had not been dismissed from the state court suit at the time of removal. *Id.* at 903 n. 2. Citing the *Gable* decision, among others, the Eighth Circuit dispensed with this argument in a single footnote, stating that the "question [as to removal] was properly decided by a magistrate, who concluded that a settlement between [the plaintiff] and the pilot's estate was final enough to support removal." *Id.*

Although the opinion reveals that the pilot was never dismissed from the state court action prior to removal, the opinion never discusses whether there was any document received by Cessna memorializing the settlement or what facts the magistrate judge relied upon in determining the settlement was "final enough" to allow removal. *Id.* It is entirely possible that a document had been received and that the court was addressing the argument that removal should not be had because the pilot had not been formally dismissed from the case at the time of removal. This, as was discussed in this court's initial report and recommendation (*see* Docket No. 16), is not fatal to removal if realignment of the parties is proper. Thus, the *Chohlis* opin-

ion, though a rare appellate opinion and one that is binding on this court, is not conclusive because there simply are not enough facts revealed in the opinion to determine if it is applicable to the precise issue in this case.

Likewise, the case of *Bumgardner v. Combustion Engineering, Inc.,* 432 F.Supp. 1289 (D.S.C.1977) (cited by the *Chohlis* and *Heniford* cases), relies in part on an extended discussion of the *Gable* case. In the *Bumgardner* case, the plaintiff and a resident defendant secretly settled their claims without notifying the other parties. *Id.* at 1290–91. The settling resident defendant had asserted cross-claims against the other nonresident defendants. *Id.* At a subsequent deposition of a key witness, the attorney for the plaintiff gave the attorney for the resident settling defendant a handwritten list of questions to ask the deponent. *Id.* During the course of the deposition, the attorneys for the nonresident defendants became suspicious because the questions being asked by the resident defendant were so favorable to the plaintiff. *Id.* They confronted the attorney for the resident defendant and he revealed the existence of the settlement agreement and showed the other defense attorneys the list of questions that the plaintiff's attorney had given him. *Id.* The nonresident defendants immediately petitioned for removal. *Id.* at 1291.

The *Bumgardner* case does not discuss the document-received requirement of § 1446(b), although the factual recitation makes clear that the removing defendants did receive a document-the handwritten list of questions from the plaintiff's attorney. *Id.* at 1290–92. The holding of the *Bumgardner* court, relying on the earlier *Gable* decision, was that the case was removable upon the settlement, regardless of whether the resident defendant had been formally dismissed from the state action at the time of removal. *Id.*

The holdings of the *Bumgardner, Chohlis,* cases are called into doubt because of their reliance on *Gable,* a decision that is clearly inapposite to any analysis of § 1446(b) because of the substantive difference in the modern removal statutes and those statutes which existed in 1934. However, even assuming that the holdings of these three cases are still good law, they are unexceptional and do not dictate the result in this case.

These three cases stand for the proposition that removal can still be had even if the settling, resident defendant has not been formally dismissed from the case. Although these cases do not discuss realignment, as can be seen from the court's discussion in its previous report and recommendation (*see* Docket 16 at subsections B and C), the failure to formally dismiss a settling resident defendant does not pose an impediment to removal because that defendant can and should be realigned with the plaintiff or realigned as a third-party defendant (in which case citizenship is not taken into account). These three cases do not speak to the requirement of § 1446(b) that a document of some kind must be received by the removing defendant in order to trigger the right to remove.

Based on the foregoing authorities, this court affirms its prior conclusion that removal pursuant to 28 U.S.C. § 1446(b) requires the receipt of a document of some kind evidencing the right to remove. It remains to be decided, then, whether the e-mail received in this case constitutes such a document.

### 3. Whether the E–Mail Satisfies the Written Document Requirement

The document-received requirement of § 1446(b) requires that three elements be met: (1) there exists an "amend-

ed pleading, motion, order or other paper" which (2) the removing party received from the opposing party or from the court from which (3) the removing party is able to "first ascertain" that federal diversity jurisdiction exists. *Movie Gallery US, LLC v. Smith,* 574 F.Supp.2d 1244, 1248 (M.D.Ala.2008).

▄ It is clear to the court that the form of the document received in this case- an electronic written communication in the form of an e-mail-does constitute an "other paper" within the meaning of § 1446(b), thus satisfying the first element. *See Lowery v. Alabama Power Co.,* 483 F.3d 1184, 1212 n. 62 (11th Cir.2007), *cert. denied sub nom.,* 553 U.S. 1080, 128 S.Ct. 2877, 171 L.Ed.2d 812 (2008) (citing *Callahan v. Countrywide Home Loans, Inc.,* 2006 WL 1776747, at **3–4 (N.D.Fla. June 26, 2006), for the proposition that an e-mail may satisfy the "other paper" requirement); *Baker v. Nextel South Corp.,* 2009 WL 1703276, *2 n. 3 (S.D.Fla. May 26, 2009) (assuming, without deciding, that an e-mail qualified as an "other paper" under § 1446(b)); *Movie Gallery US, LLC,* 574 F.Supp.2d at 1247–48 (citing to the *Lowery* footnote in support of the proposition that an e-mail may constitute an "other paper"); *Simpson v. AWC 1997 Corp.,* 2008 WL 2884999, *3 (N.D.N.Y. July 23, 2008) (holding that e-mailed copy of answers to interrogatories constituted "other paper"); and *Clipper Telecommunications, Inc. v. ETS Payphones, Inc.,* 2008 WL 2368094, *1, *3 (W.D.Tex. Mar. 11, 2008) (e-mailed settlement negotiations constituted "other paper"). Also, it is clear that Valspar received the document from an opposing party, Ms. Estes (against whom Valspar had asserted a cross-claim), thus satisfying the second element.

▄ The real issue with regard to the June 10, 2009, e-mail from Ms. Estes' lawyer to Valspar's lawyer is whether, from the face of that document, it can be ascertained that the case was now removable on the basis of federal diversity jurisdiction. As the *Lowery* court, cited by Valspar itself, stated, the document received must "unambiguously establish federal jurisdiction." *Lowery,* 483 F.3d at 1213. The court must remand unless the basis for jurisdiction "is either stated clearly on the face of the documents before the court, or readily deducible from them . . ." *Id.* at 1211. *See also, Movie Gallery US, LLC,* 574 F.Supp.2d at 1248 (same).

This issue is problematic for Valspar. The June 10, 2009, e-mail does not explicitly confirm that Ms. Estes settled with State Farm. Nor is the fact of settlement "readily deducible" from the e-mail. Rather, Ms. Estes' lawyer simply expresses an interest in the outcome of the litigation. This expression of interest could be no less true if Ms. Estes were in or out of the litigation.

Indeed, Valspar's assertion that the e-mail clearly expresses the fact of settlement is belied by Valspar's own conduct. After receiving the e-mail from Ms. Estes' counsel, Valspar sent its own e-mail *asking* whether settlement had occurred. *See* Docket No. 18–3. If settlement were obvious from the face of Ms. Estes' e-mail, there would have been no need for Valspar to have subsequently inquired whether a settlement had been reached.

The *Bumgardner* case, discussed earlier, deserves mention at this point. In that case, the document in question was a handwritten list of questions drafted by the plaintiff and given to the settling defendant to ask a witness at a deposition. *Bumgardner,* 432 F.Supp. at 1289–92. The questions were so obviously favorable to the plaintiff and against the settling defendant's interests that the other defendants immediately became suspicious, whereupon they questioned the settling defendant and learned of the settlement. *Id.* In the words of the *Lowery* court, the

list of hand-written questions from the plaintiff was of such a nature that the fact of settlement (and, hence, the basis for removal jurisdiction), was "readily deducible from them." *Lowery*, 483 F.3d at 1211. The same cannot be said for the e-mail in question in this case.

The court notes that the cases draw a distinction between arguments for remand that attack the procedure of the removal and challenges to the court's subject matter jurisdiction. *Lowery*, 483 F.3d at 1213 n. 64. Under § 1446(c), a plaintiff has only 30 days to move to remand on the basis that the procedure for removal was flawed. *Id.* However, challenges to the court's subject matter jurisdiction may be raised at any time. *Id.* Furthermore, when an argument is raised that the procedure for removal was improper, the court is limited to considering the propriety of removal based only on the documents that existed in the state court at the time the action was removed. *Id.* at 1214–15, and n. 64, n. 66. When a challenge is raised to the court's subject matter jurisdiction, however, "the court may look to any relevant information the parties may present, up until the time of the challenge to jurisdiction." *Id.* at 1213 n. 64 (citing *Grubbs v. Gen. Elec. Credit Corp.*, 405 U.S. 699, 702, 92 S.Ct. 1344, 31 L.Ed.2d 612 (1972)).

State Farm's argument for remand in this case is that the procedure for removal was improper. State Farm is not arguing—at this juncture now—that this court lacks subject matter jurisdiction. Indeed, it appears subject matter jurisdiction exists. The question then, is procedure, and the court is limited to the documents known to Valspar in the state court proceeding at the time of removal. From the face of those documents, and construing the removal statutes strictly as this court must, this court simply cannot conclude that Valspar has carried its burden of demonstrating an unequivocal right to remove.

Nor is the result reached in this case anomalous. There is no evidence that State Farm or Ms. Estes acted in bad faith to prevent Valspar from removing this matter. Valspar could have asked State Farm to send Valspar a letter confirming the fact of settlement. If State Farm would not willingly do this, Valspar could have served State Farm with a request to admit the fact of settlement and asked the state court for an order shortening the customary 30–day response time. *See* S.D.C.L. § 15–6–36(a) (providing for requests to admit as a discovery device and granting the state trial court discretion to require a response thereto in less than the normal 30 days granted by statute).

Furthermore, disallowing removal does not undermine a constitutional right. The right to remove is solely a creature of statute. 14B *Federal Practice & Procedure*, § 3721, pages 285–86. Removal takes a case from a court that has a clear and co-equal right to hear the case—hence, the rule that removal statutes should be strictly construed. *Shamrock Oil & Gas Corp.*, 313 U.S. at 109, 61 S.Ct. 868.

Furthermore, although state court prejudice against an out-of-state defendant is at the heart of the right to remove, here that value is not in issue as the action between Valspar and State Farm is an action between two out-of-state corporations. Neither can be presumed to have an advantage or a disadvantage in South Dakota state court.

This court concludes that State Farm's motion to remand must be granted. The court bases this conclusion on the following factors. The right of removal is wholly statutory and must, therefore, depend on an interpretation of the words of the statute. 14B *Federal Practice & Procedure*, § 3721, pages 285–86. The statute— § 1446(b)—requires that · a document be

received by the removing defendant before the right to remove is triggered. *See* 28 U.S.C. § 1446(b). Also, the statute is to be strictly construed due to comity concerns because the right to remove is in derogation of the power of state courts to hear cases within their jurisdiction. *Shamrock Oil & Gas Corp.,* 313 U.S. at 109, 61 S.Ct. 868.

Finally, the burden is on Valspar as the removing party to unequivocally demonstrate that this court has removal jurisdiction. *Central Iowa Power Coop.,* 561 F.3d at 912. All doubts as to whether removal jurisdiction exists are to be resolved in favor of remand. *Id.*; *Bates,* 548 F.3d at 638. Valspar has failed to cite the court to a single case where a court clearly and unequivocally held that the document-received requirement of § 1446(b) was not met, and was waived by the federal court, where removal took place in a context outside of trial in the state court. Based on the above discussion, then, this court respectfully recommends that this case be remanded back to South Dakota state court.

## CONCLUSION

Based on the foregoing discussion, this court recommends that State Farm's motion to remand this case back to South Dakota state court [Docket No. 9] be granted and that Valspar's objections to this court original report and recommendation [Docket 17] be overruled.

## NOTICE TO PARTIES

The parties have fourteen (14) days after service of this report and recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1)(B), unless an extension of time for good cause is obtained. *See also* Fed. R. Civ. P. 72(b)(2). Failure to file timely objections will result in the waiver of the right to appeal questions of fact. Objections must be timely and specific in order to require *de novo* review by the district court. *See Thompson v. Nix,* 897 F.2d 356 (8th Cir.1990); *Nash v. Black,* 781 F.2d 665 (8th Cir.1986).

APPENDIX

# THE CODE OF THE LAWS

OF THE

# UNITED STATES OF AMERICA

OF A GENERAL AND PERMANENT CHARACTER

IN FORCE

## JANUARY 3, 1935

### 1934 EDITION

CONSOLIDATED, CODIFIED, SET FORTH, AND PUBLISHED IN 1935
IN THE ONE HUNDRED AND FIFTY-NINTH YEAR
OF THE REPUBLIC

[WITH ANCILLARIES AND INDEX]

UNITED STATES
GOVERNMENT PRINTING OFFICE
WASHINGTON : 1935

# TITLE 28.—JUDICIAL CODE AND JUDICIARY

## PART I. JUDICIAL CODE

| Chap. | | Sec. |
|---|---|---|
| 1. | District courts; organization | 1 |
| 2. | District courts; jurisdiction | 41 |
| 3. | District courts; removal of causes | 71 |
| 4. | District courts; miscellaneous provisions | 101 |
| 5. | District courts; districts and provisions applicable to particular States | 151 |
| 6. | Circuit courts of appeals | 211 |
| 7. | The court of Claims | 241 |
| 8. | The United States Court of Customs and Patent Appeals | 301 |
| 9. | The Supreme Court | 321 |
| 10. | Provisions common to more than one court | 371 |
| 11. | Juries | 411 |
| 12. | General provisions | 430 |
| 13. | Repealing provisions | 441 |

## PART II.—THE JUDICIARY

| 14. | Habeas corpus | 451 |
| 15. | District attorneys, marshals, clerks, and other court officers, and commissioners | 481 |
| 16. | Fees, compensation, and accounts of officers | 541 |
| 17. | Evidence | 631 |
| 18. | Procedure | 721 |
| 19. | United States as party defendant in certain cases | 901 |

## CROSS-REFERENCES

Consular courts; see Title 22, FOREIGN RELATIONS AND INTERCOURSE.

Courts of Territories; see Title 48, TERRITORIES AND INSULAR POSSESSIONS.

Criminal procedure; see Part 2 of Title 18, CRIMINAL CODE AND CRIMINAL PROCEDURE.

Department of Justice; see chapter 5 of Title 5, EXECUTIVE DEPARTMENTS AND GOVERNMENT OFFICERS AND EMPLOYEES.

United States Court for China; see Title 22, FOREIGN RELATIONS AND INTERCOURSE.

## PART I.—JUDICIAL CODE

## Chapter 1.—DISTRICT COURTS; ORGANIZATION

Sec.

1. District courts; judges; appointment and residence.
2. Additional district judges for certain districts; vacancies.
3. Same; residence.
4. Same; filling vacancy in district of Minnesota.
4a. Same; filling vacancy in northern district of California.
4b. Additional judge for Southern District of Iowa; residence, qualifications, etc.
4c. Additional judge for District of South Dakota.
4d. Additional judge for Eastern and Western Districts of South Carolina.
5. District judges; salaries.
6. Clerks of certain courts; appointment.
7. Deputies and clerical assistants.
8. Deputy clerks; removal; death of clerk; liability for defaults of deputies.
9. Criers and bailiffs.
10. Records; where kept.
11. Altering terms.
12. Trials not discontinued by new term.
13. Courts open as courts of admiralty and equity.
14. Monthly adjournments for trial of criminal causes.
15. Special terms.
16. Adjournment for nonattendance of judge.
17. Disability of judge; accumulation of business; designation of another judge.
18. Power of designated judge.
19. Designation by Chief Justice.
20. New appointment and revocation.
21. Designation to aid another judge.
22. Circuit judge designated to hold district court; powers.
23. Same; duty of district or circuit judge.
24. Interest or relationship of district judge.
25. Affidavit of personal bias or prejudice of judge.
26. Continuance in case of vacancy in office.
27. Districts with more than one judge; division of business.

**Section 1. (Judicial Code, section 1, amended.) District courts; judges; appointment and residence.** In each of the districts described in chapter 5 there shall be a court called a district court, for which there shall be appointed one judge, to be called a district judge, except that in the northern district of California, the district of Connecticut, the eastern and the southern districts of Illinois, the district of Maryland, the district of Nebraska, the northern, and western districts of New York, the northern and southern districts of Ohio, the district of Oregon, the middle and the western districts of Pennsylvania, the western district of Texas, and the western district of Washington, there shall be an additional district judge in each, in the southern district of California, the southern district of Florida, the eastern district of Michigan, the district of Minnesota, and the eastern district of Pennsylvania, two additional district judges, in the district of New Jersey and in the eastern district of New York three additional district judges, in the northern district of Illinois four additional district judges, and in the southern district of New York six additional district judges, and such other additional district judges as have been or may be provided for by law: *Provided,* That the district court for the middle district of Alabama shall also be a district judge for the northern district thereof. Every district judge shall reside in the district or one of the districts for which he is appointed, and for offending against this provision shall be deemed guilty of high misdemeanor. The official residences of the two judges in the northern district of New York and of the two judges in the western district of New York shall not be in the same or adjoining counties. (R. S. §§ 551, 552; Aug. 2, 1886, c. 842, 24 Stat. 213; Dec. 19, 1900, c. 3, 31 Stat. 726; Feb. 4, 1903, c. 402, 32 Stat. 795; Feb. 9, 1903, c. 527, 32 Stat. 805; Apr. 1, 1904, c. 857, 33 Stat. 155; Mar. 3, 1905, c. 1418, 33 Stat. 987; Mar. 3, 1905, c. 1427, § 2, 33 Stat. 993; May 26, 1906, c. 2557, 34 Stat. 202; Feb. 25, 1907, c. 1189, 34 Stat. 928; Feb. 25, 1907, c. 1198, 34 Stat. 931; Feb. 27, 1907, c. 2073, 34 Stat. 997; Mar. 2, 1907, c. 2575, 34 Stat. 1258; Feb. 26, 1909, c. 215, 35 Stat. 656; Mar. 2, 1909, c. 242, 35 Stat. 685; Mar. 2, 1909, c. 243, 35 Stat. 686; Feb. 24, 1910, c. 56, 36 Stat. 201; Feb. 24, 1910, c. 57, 36 Stat. 202; June 25, 1910, c. 410, 36 Stat. 888; Mar. 3, 1911, c. 231, § 1, 36 Stat. 1087; July 30, 1914, c. 216, 38 Stat. 580; Mar. 3, 1915, c. 100, § 1, 38 Stat. 961; Apr. 11, 1916, c. 64, § 1, 39 Stat. 48; Feb. 26, 1917, c. 120, 39 Stat. 938; Sept. 14, 1922, c. 306, § 1, 42 Stat. 837; May 28, 1926, c. 414, § 2 (b), 44 Stat. 672; Mar. 3, 1927, c. 297, § 1, 44 Stat. 1346; Mar. 3, 1927, c. 298, 44 Stat. 1347; Mar. 3, 1927, c. 300, § 1, 44 Stat. 1348; Mar. 3, 1927, c. 332, 44 Stat. 1370; Mar. 3, 1927, c. 338, 44 Stat. 1374; Mar. 3, 1927, c. 344, 44 Stat. 1380; Apr. 21, 1928, c. 393, 45 Stat. 439; May 29, 1928, c. 882, 45 Stat. 974; Jan. 17, 1929, c. 72, § 1, 45 Stat. 1081; Feb. 26, 1929, c. 334, 45 Stat. 1317; Feb. 28, 1929, c. 358, § 1, 45 Stat. 1344; Feb. 28, 1929, c. 380, 45 Stat. 1409; Mar. 1, 1929, c. 418, § 1, 45 Stat. 1422; May 28, 1930, c. 346, § 1, 46 Stat. 431; June 27, 1930, c. 633, 46 Stat. 819; June 27, 1930, c. 635, § 1, 46 Stat. 820; July 3, 1930, c. 852, 46 Stat. 1006; Feb. 20, 1931, c. 244, 46 Stat. 1196; Feb. 20, 1931, c. 245, 46 Stat. 1197; Feb. 25, 1931, c. 296, 46 Stat. 1417; May 20, 1932, c. 190, 47 Stat. 161.)

**§ 2. Additional district judges for certain districts; vacancies.** There shall be in addition to the judges provided for in sections 1 and 3, one judge of the district court of the United States for the northern judicial district of the State of Texas; one judge of the district court of the United States for the judicial district of the State of North Dakota; one judge of the district court of the United States for the western district of Michigan. The said judges shall possess the same powers, perform the same duties, and receive the same compensation and allowances as the present judges of the respective districts. The judges appointed pursuant to this section for the judicial district of the State of North Dakota and for the western district of Michigan shall be held and treated as the senior judges and shall exercise such powers and perform such duties in their respective judicial districts as may be incident to seniority. Whenever a vacancy shall occur in either the office of the district judge of the northern district of Texas, or the district

**§ 47a. (Judicial Code, section 210.)** Appeal to Supreme Court from final decree; time for taking; priority. A final judgment or decree of the district court in the cases specified in section 44 of this title may be reviewed by the Supreme Court of the United States if appeal to the Supreme Court be taken by an aggrieved party within sixty days after the entry of such final judgment or decree, and such appeals may be taken in like manner as appeals are taken under existing law in equity cases. And in such cases th.. notice required shall be served upon the defendant in the case and upon the attorney general of the State. The district court may direct the original record instead of a transcript thereof to be transmitted on appeal. The Supreme Court may affirm, reverse, or modify as the case may require the final judgment or decree of the district court in the cases specified in section 44 of this title. Appeal to the Supreme Court, however, shall in no case supersede or stay the judgment or decree of the district court appealed from, unless the Supreme Court or a justice thereof shall so direct, and appellant shall give bond in such form and of such amount as the Supreme Court, or the justice of that court allowing the stay, may require. Appeals to the Supreme Court under this section and section 47 of this title shall have priority in hearing and determination over all other causes except criminal causes in that court. (Mar. 3, 1911, c. 231, § 210, 36 Stat. 1150; Oct. 22, 1913, c. 82, 38 Stat. 220.)

**§ 48. (Judicial Code, section 211.)** Suits to be against United States; intervention by United States. All cases and proceedings specified in section 44 of this title shall be brought by or against the United States, and the United States may intervene in any case or proceeding whenever, though it has not been made a party, public interests are involved. (June 18, 1910, c. 309, § 4, 36 Stat. 542; Mar. 3, 1911, c. 231, § 211, 36 Stat. 1150; Oct. 22, 1913, c. 82, 38 Stat. 219.)

**§ 49. (Judicial Code, section 25.)** Appellate jurisdiction; Chinese exclusion laws. The district courts shall have appellate jurisdiction of the judgments and orders of United States commissioners in cases arising under the Chinese exclusion laws. (Mar. 3, 1911, c. 231, § 25, 36 Stat. 1094.)

**§ 50. (Judicial Code, section 26.)** Same; felonies within Yellowstone National Park. The district court for the district of Wyoming shall have jurisdiction of all felonies committed within the Yellowstone National Park, and appellate jurisdiction of judgments in cases of conviction before the commissioner authorized to be appointed under section 27 of Title 16. (Mar. 3, 1911, c. 231, § 26, 36 Stat. 1094.)

**§ 51. (Judicial Code, section 27.)** Jurisdiction of crimes on Indian reservations in South Dakota. The District Court of the United States for the District of South Dakota shall have jurisdiction to hear, try, and determine all actions and proceedings in which any person shall be charged with the crime of murder, manslaughter, rape, assault with intent to kill, arson, burglary, larceny, or assault with a dangerous weapon, committed within the limits of any Indian reservation in the State of South Dakota. (Feb. 2, 1903, c. 351, 32 Stat. 793; Mar. 4, 1909, c. 321, § 329, 35 Stat. 1151; Mar. 3, 1911, c. 231, § 27, 36 Stat. 1094.)

**§ 52.** Claims resulting from seizure of vessels for unlawful sealing in Bering Sea; claims which may be submitted; limitations. [Temporary.]

This section (Act June 7, 1924, c. 308, §§ 1, 2, 3, 43 Stat. 595) is temporary.

**§ 53.** Jurisdiction of suits by or against China Trade Act corporation. The Federal district courts shall have exclusive original jurisdiction of all suits (except as provided by sections 191 to 197, 199, 200, and 202 of Title 22, as amended) to which a China Trade Act corporation, or a stockholder, director, or officer thereof in his capacity as such, is a party. Suit against the corporation may be brought in the United States Court for China, or in the Supreme Court of the District of Columbia or in the Federal district court for any district in which the corporation has an agent and is engaged in doing business. (Sept. 19, 1922, c. 346, § 20, 42 Stat. 855; Feb. 26, 1925, c. 345, § 10, 43 Stat. 996.)

## Chapter 3.—DISTRICT COURTS; REMOVAL OF CAUSES

Sec.
71. Removal of suits from State courts.
72. Same; procedure.
73. Same; suits under grants of land from different States.
74. Same; causes against persons denied civil rights.
75. Same; petitioner in actual custody of State court.
76. Same; suits and prosecutions against revenue officers.
77. Same; suits by aliens.
78. Same; copies of records refused by clerk of State court.
79. Same; previous attachment bonds or orders.
80. Same; dismissal or remand.
81. Same; proceedings in suits removed.
82. Same; record; filing and return.
83. Service of process after removal.

**Section 71. (Judicial Code, section 28, amended.)** Removal of suits from State courts. Any suit of a civil nature, at law or in equity, arising under the Constitution or laws of the United States, or treaties made, or which shall be made, under their authority, of which the district courts of the United States are given original jurisdiction by Part I of this title, in any State court, may be removed by the defendant or defendants therein to the district court of the United States for the proper district. Any other suit of a civil nature, at law or in equity, of which the district courts of the United States are given jurisdiction, by Part I of this title, in any State court, may be removed into the district court of the United States for the proper district by the defendant or defendants therein, being nonresidents of that State. And when in any suit mentioned in this section there shall be a controversy which is wholly between citizens of different States, and which can be fully determined as between them, then either one or more of the defendants actually interested in such controversy may remove said suit into the district court of the United States for the proper district. And where a suit is brought in any State court, in which there is a controversy between a citizen of the State in which the suit is brought and a citizen of another State, any defendant, being such citizen of another State, may remove such suit into the district court of the United States for the proper district, at any time before the trial thereof, when it shall be made to appear to said district court that from prejudice or local influence he will not be able to obtain justice in such State court, or in any other State court to which the said defendant may, under the laws of the State, have the right, on account of such prejudice or local influence, to remove said cause. If it further appear that said suit can be fully and justly determined as to the other defendants in the State court, without being affected by such prejudice or local influence, and that no party to the suit will be prejudiced by a separation of the parties, said district court may direct the suit to be remanded, so far as relates to such other defendants, to the State court, to be proceeded with therein. At any time before the trial of any suit in any district court, which has been removed to said court from a State court on the affidavit of any party plaintiff that he had reason to believe and did believe that, from prejudice or local influence, he was unable to obtain justice in said State court, the district court shall, on application of the other party, examine into the truth of said affidavit and the grounds thereof, and, unless it shall appear to the satisfaction of said court that said party will not be able to obtain justice in said State court, it shall cause the same to be remanded thereto. Whenever any cause shall be removed from any State court into any district court of the United States, and the district court shall decide that the cause was improperly removed, and order the same to be remanded to the State court from whence it came, such remand shall be immediately carried into execution, and no appeal from the decision of the district court so remanding such cause shall be allowed. No case arising under sections 51 to 59 of Title 45, and

brought in any State court of competent jurisdiction shall be removed to any court of the United States. No suit brought in any State court of competent jurisdiction against a railroad company, or other corporation, or person, engaged in and carrying on the business of a common carrier, to recover damages for delay, loss of, or injury to property received for transportation by such common carrier under section 20 of Title 49, shall be removed to any court of the United States where the matter in controversy does not exceed, exclusive of interest and costs, the sum or value of $3,000. (Mar. 3, 1875, c. 137, § 2, 18 Stat. 470; Mar. 3, 1887, c. 373, § 1, 24 Stat. 552; Aug. 13, 1888, c. 866, § 1, 25 Stat. 433; Apr. 5, 1910, c. 143, § 1, 36 Stat. 291; Mar. 3, 1911, c. 231, § 28, 36 Stat. 1094; Jan. 20, 1914, c. 11, 38 Stat. 278; Jan. 31, 1928, c. 14, § 1, 45 Stat. 54.)

Since no right of removal by the plaintiff has existed since the Act of 1887–88 Federal judges have considered the use of the word "plaintiff" a misprint and have treated the provision as though the word "defendant" had been used.

§ 72. (Judicial Code, section 29.) Same; procedure. Whenever any party entitled to remove any suit mentioned in section 71 of this title, except suits removable on the ground of prejudice or local influence, may desire to remove such suit from a State court to the district court of the United States, he may make and file a petition, duly verified, in such suit in such State court at the time, or any time before the defendant is required by the laws of the State or the rule of the State court in which such suit is brought to answer or plead to the declaration or complaint of the plaintiff, for the removal of such suit into the district court to be held in the district where such suit is pending, and shall make and file therewith a bond, with good and sufficient surety, for his or their entering in such district court, within thirty days from the date of filing said petition, a certified copy of the record in such suit, and for paying all costs that may be awarded by the said district court if said district court shall hold that such suit was wrongfully or improperly removed thereto, and also for their appearing and entering special bail in such suit if special bail was originally requisite therein. It shall then be the duty of the State court to accept said petition and bond and proceed no further in such suit. Written notice of said petition and bond for removal shall be given the adverse party or parties prior to filing the same. The said copy being entered within said thirty days as aforesaid in said district court of the United States, the parties so removing the said cause shall, within thirty days thereafter, plead, answer, or demur to the declaration or complaint in said cause, and the cause shall then proceed in the same manner as if it had been originally commenced in the said district court. (Mar. 3, 1875, c. 137, § 3, 18 Stat. 470; Mar. 3, 1887, c. 373, § 1, 24 Stat. 552; Aug. 13, 1888, c. 866, § 1, 25 Stat. 434; Mar. 3, 1911, c. 231, § 29, 36 Stat. 1095.)

§ 73. (Judicial Code, section 30.) Same; suits under grants of land from different States. If in any action commenced in a State court the title of land be concerned, and the parties are citizens of the same State and the matter in dispute exceeds the sum or value of $3,000, exclusive of interest and costs, the sum or value being made to appear, one or more of the plaintiffs or defendants, before the trial, may state to the court, and make affidavit if the court require it, that he or they claim, and shall rely upon, a right or title to the land under a grant from a State, and produce the original grant, or an exemplification of it, except where the loss of public records shall put it out of his or their power, and shall move that any one or more of the adverse party inform the court whether he or they claim a right or title to the land under a grant from some other State, the party or parties so required shall give such information, or otherwise not be allowed to plead such grant or give it in evidence upon the trial. If he or they inform the court that he or they do claim under such grant, any one or more of the party moving for such information may then, on petition and bond, as hereinbefore mentioned in this chapter, remove the cause for trial

to the district court of the United States next to be holden in such district; and any one of either party removing the cause shall not be allowed to plead or give evidence of any other title than that by him or them stated as aforesaid as the ground of his or their claim. (R. S. § 647; Mar. 3, 1875, c. 137, § 3, 18 Stat. 471; Mar. 3, 1887, c. 373, § 1, 24 Stat. 552; Aug. 13, 1888, c. 866, § 1, 25 Stat. 435; Mar. 3, 1911, c. 231, § 30, 36.Stat. 1096.)

R. S. § 647 from Act Sept. 24, 1789, c. 20, § 12, 1 Stat. 79.

§ 74. (Judicial Code, section 31.) Same; causes against persons denied civil rights. When any civil suit or criminal prosecution is commenced in any State court, for any cause whatsoever, against any person who is denied or cannot enforce in the judicial tribunals of the State, or in the part of the State where such suit or prosecution is pending, any right secured to him by any law providing for the equal civil rights of citizens of the United States, or of all persons within the jurisdiction of the United States, or against any officer, civil or military, or other person, for any arrest or imprisonment or other trespasses or wrongs made or committed by virtue of or under color of authority derived from any law providing for equal rights as aforesaid, or for refusing to do any act on the ground that it would be inconsistent with such law, such suit or prosecution may, upon the petition of such defendant, filed in said State court at any time before the trial or final hearing of the cause, stating the facts and verified by oath, be removed for trial into the next district court to be held in the district where it is pending. Upon the filing of such petition all further proceedings in the State courts shall cease, and shall not be resumed except as hereinafter provided. But all bail and other security given in such suit or prosecution shall continue in like force and effect as if the same had proceeded to final judgment and execution in the State court. It shall be the duty of the clerk of the State court to furnish such defendant, petitioning for a removal, copies of said process against him, and of all pleadings, depositions, testimony, and other proceedings in the case. If such copies are filed by said petitioner in the district court on the first day of its session, the cause shall proceed therein in the same manner as if it had been brought there by original process; and if the said clerk refuses or neglects to furnish such copies, the petitioner may thereupon docket the case in the district court, and the said court shall then have jurisdiction therein, and may, upon proof of such refusal or neglect of said clerk, and upon reasonable notice to the plaintiff, require the plaintiff to file a declaration, petition, or complaint in the cause; and, in case of his default, may order a nonsuit, and dismiss the case at the costs of the plaintiff, and such dismissal shall be a bar to any further suit touching the matter in controversy. But if, without such refusal or neglect of said clerk to furnish such copies and proof thereof, the petitioner for removal fails to file copies in the district court, as herein provided, a certificate, under the seal of the district court, stating such failure, shall be given, and upon the production thereof in said State court the cause shall proceed therein as if no petition for removal had been filed. (R. S. § 641; Mar. 3, 1911, c. 231, § 31, 36 Stat. 1096.)

R. S. § 641 from Act Mar. 3, 1863, c. 81, § 5, 12 Stat. 756; Act Apr. 9, 1866, c. 31, § 3, 14 Stat. 27; Act May 11, 1866, c. 80, §§ 3, 5, 14 Stat. 46; Act May 31, 1870, c. 114, §§ 16, 18, 16 Stat. 144.

§ 75. (Judicial Code, section 32.) Same; petitioner in actual custody of State court. When all the acts necessary for the removal of any suit or prosecution, as provided in section 74 of this title, have been performed and the defendant petitioning for such removal is in actual custody on process issued by said State court, it shall be the duty of the clerk of said district court to issue a writ of habeas corpus cum causa, and of the marshal, by virtue of said writ, to take the body of the defendant into his custody, to be dealt with in said district court according to law and the orders of said court, or, in vacation, of any judge thereof; and the marshal shall file with or deliver to

the clerk of said State court a duplicate copy of said writ. (R. S. § 642; Mar. 3, 1911, c. 231, § 32, 36 Stat. 1097.)

R. S. § 642 from Act Mar. 3, 1863, c. 81, § 5, 12 Stat. 756; Act Apr. 9, 1866, c. 81, § 3, 14 Stat. 27; Act May 11, 1866, c. 80, §§ 3, 5, 14 Stat. 46; Act Feb. 5, 1867, c. 27, 14 Stat. 385.

§ 76. (Judicial Code, section 33, amended.) Same; suits and prosecutions against revenue officers. When any civil suit or criminal prosecution is commenced in any court of a State against any officer appointed under or acting by authority of any revenue law of the United States, or against any person acting under or by authority of any such officer, on account of any act done under color of his office or of any such law, or on account of any right, title, or authority claimed by such officer or other person under any such law, or is commenced against any person holding property or estate by title derived from any such officer and affects the validity of any such revenue law, or against any officer of the courts of the United States for or on account of any act done under color of his office or in the performance of his duties as such officer, or when any civil suit or criminal prosecution is commenced against any person for or on account of anything done by him while an officer of either House of Congress in the discharge of his official duty in executing any order of such House, the said suit or prosecution may at any time before the trial or final hearing thereof be removed for trial into the district court next to be holden in the district where the same is pending upon the petition of such defendant to said district court and in the following manner: Said petition shall set forth the nature of the suit or prosecution and be verified by affidavit and, together with a certificate signed by an attorney or counselor at law of some court of record of the State where such suit or prosecution is commenced or of the United States stating that, as counsel for the petitioner, he has examined the proceedings against him and carefully inquired into all the matters set forth in the petition, and that he believes them to be true, shall be presented to the said district court, if in session, or if it be not, to the clerk thereof at his office, and shall be filed in said office. The cause shall thereupon be entered on the docket of the district court and shall proceed as a cause originally commenced in that court; but all bail and other security given upon such suit or prosecution shall continue in like force and effect as if the same had proceeded to final judgment and execution in the State court. When the suit is commenced in the State court by summons, subpoena, petition, or any other process except capias, the clerk of the district court shall issue a writ of certiorari to the State court requiring it to send to the district court the record and the proceedings in the cause. When it is commenced by capias or by any other similar form of proceeding by which a personal arrest is ordered, he shall issue a writ of habeas corpus cum causa, a duplicate of which shall be delivered to the clerk of the State court or left at his office by the marshal of the district or his deputy or by some other person duly authorized thereto; and thereupon it shall be the duty of the State court to stay all further proceedings in the cause, and the suit or prosecution, upon delivery of such process, or leaving the same as aforesaid, shall be held to be removed to the district court, and any further proceedings, trial, or judgment therein in the State court shall be void. If the defendant in the suit or prosecution be in actual custody on mesne process therein, it shall be the duty of the marshal, by virtue of the writ of habeas corpus cum causa, to take the body of the defendant into his custody, to be dealt with in the cause according to law and the order of the district court, or, in vacation, of any judge thereof; and if, upon the removal of such suit or prosecution, it is made to appear to the district court that no copy of the record and proceedings therein in the State court can be obtained, the district court may allow and require the plaintiff to proceed de novo and to file a declaration of his cause of action, and the parties may thereupon proceed as in actions originally brought in said district court. On failure of the plaintiff so to

proceed, judgment of non prosequitur may be rendered against him, with costs for the defendant. (R. S. § 643; Mar. 3, 1875, c. 130, § 8, 18 Stat. 401; Feb. 8, 1894, c. 25, § 1, 28 Stat. 36; Mar. 3, 1911, c. 231, § 33, 36 Stat. 1097; Aug. 23, 1916, c. 399, 39 Stat. 532.)

R. S. § 643 from Act Mar. 2, 1833, c. 57, § 3, 4 Stat. 633; Act July 13, 1866, c. 184, § 67, 14 Stat. 171; Act Feb. 28, 1871, c. 99, § 16, 16 Stat. 438.

§ 77. (Judicial Code, section 34.) Same; suits by aliens. Whenever a personal action has been or shall be brought in any State court by an alien against any citizen of a State who is, or at the time the alleged action accrued was, a civil officer of the United States, being a nonresident of that State wherein jurisdiction is obtained by the State court, by personal service of process, such action may be removed into the district court of the United States in and for the district in which the defendant shall have been served with the process, in the same manner as provided for the removal of an action brought in a State court by the provisions of section 76 of this title. (R. S. § 644; Mar. 3, 1911, c. 231, § 34, 36 Stat. 1098.)

R. S. § 644 from Act Mar. 30, 1872, c. 72, 17 Stat. 44.

§ 78. (Judicial Code, section 35.) Same; copies of records refused by clerk of State court. In any case where a party is entitled to copies of the records and proceedings in any suit or prosecution in a State court, to be used in any court of the United States, if the clerk of said State court, upon demand, and the payment or tender of the legal fees, refuses or neglects to deliver to him certified copies of such records and proceedings, the court of the United States in which such records and proceedings are needed may, on proof by affidavit that the clerk of said State court has refused or neglected to deliver copies thereof, on demand as aforesaid, direct such record to be supplied by affidavit or otherwise, as the circumstances of the case may require and allow; and thereupon such proceeding, trial, and judgment may be had in the said court of the United States, and all such processes awarded, as if certified copies of such records and proceedings had been regularly before the said court. (R. S. § 645; Mar. 3, 1911, c. 231, § 35, 36 Stat. 1098.)

R. S. § 645 from Act Mar. 2, 1833, c. 57, § 4, 4 Stat. 634; Act Feb. 28, 1871, c. 99, § 17, 16 Stat. 439.

§ 79. (Judicial Code, section 36.) Same; previous attachment bonds or orders. When any suit shall be removed from a State court to a district court of the United States, any attachment or sequestration of the goods or estate of the defendant had in such suit in the State court shall hold the goods or estate so attached or sequestered to answer the final judgment or decree in the same manner as by law they would have been held to answer final judgment or decree had it been rendered by the court in which said suit was commenced. All bonds, undertakings, or security given by either party in such suit prior to its removal shall remain valid and effectual notwithstanding said removal; and all injunctions, orders, and other proceedings had in such suit prior to its removal shall remain in full force and effect until dissolved or modified by the court to which such suit shall be removed. (R. S. § 646; Mar. 3, 1875, c. 137, § 4, 18 Stat. 471; Mar. 3, 1911, c. 231, § 36, 36 Stat. 1098.)

§ 80. (Judicial Code, section 37.) Same; dismissal or remand. If in any suit commenced in a district court, or removed from a State court to a district court of the United States, it shall appear to the satisfaction of the said district court, at any time after such suit has been brought or removed thereto, that such suit does not really and substantially involve a dispute or controversy properly within the jurisdiction of said district court, or that the parties to said suit have been improperly or collusively made or joined, either as plaintiffs or defendants, for the purpose of creating a case cognizable or removable under this chapter, the said district court shall proceed no further therein, but shall dismiss the suit or remand it to the court from which it was removed, as justice may require, and shall make such order as to costs as shall be just. (Mar. 3, 1875, c. 137, § 5, 18 Stat.

472; Mar. 3, 1887, c. 373, § 6, 24 Stat. 555; Aug. 13, 1888, c. 866, § 6, 25 Stat. 436; Mar. 3, 1911, c. 231, § 37, 36 Stat. 1098.)

§ 81. (Judicial Code, section 38.) Same; proceedings in suits removed. The district court of the United States shall, in all suits removed under the provisions of this chapter, proceed therein as if the suit had been originally commenced in said district court, and the same proceedings had been taken in such suit in said district court as shall have been had therein in said State court prior to its removal. (Mar. 3, 1875, c. 137, § 6, 18 Stat. 472; Mar. 3, 1911, c. 231, § 38, 36 Stat. 1098.)

§ 82. (Judicial Code, section 39.) Same; record; filing and return. In all causes removable under this chapter, if the clerk of the State court in which any such cause shall be pending shall refuse to any one or more of the parties or persons applying to remove the same, a copy of the record therein, after tender of legal fees for such copy, said clerk so offending shall, on conviction thereof in the district court of the United States to which said action or proceeding was removed, be fined not more than $1,000, or imprisoned not more than one year, or both. The district court to which any cause shall be removable under this chapter shall have power to issue a writ of certiorari to said State court commanding said State court to make return of the record in any such cause removed as aforesaid, or in which any one or more of the plaintiffs or defendants have complied with the provisions of this chapter for the removal of the same, and enforce said writ according to law. If it shall be impossible for the parties or persons removing any cause under this chapter, or complying with the provisions for the removal thereof, to obtain such copy, for the reason that the clerk of said State court refuses to furnish a copy, on payment of legal fees, or for any other reason, the district court shall make an order requiring the prosecutor in any such action or proceeding to enforce forfeiture or recover penalty, as aforesaid, to file a copy of the paper or proceeding by which the same was commenced, within such time as the court may determine; and in default thereof the court shall dismiss the said action or proceeding; but if said order shall be complied with, then said district court shall require the other party to plead, and said action or proceeding shall proceed to final judgment. The said district court may make an order requiring the parties thereto to plead de novo; and the bond given, conditioned as aforesaid, shall be discharged so far as it requires copy of the record to be filed as aforesaid. (Mar. 3, 1875, c. 137, § 7, 18 Stat. 472; Mar. 3, 1911, c. 231, § 39, 36 Stat. 1099.)

§ 83. Service of process after removal. In all cases removed from any State court to any United States court for trial in which any one or more of the defendants has not been served with process or in which the same has not been perfected prior to such removal, or in which the process served upon the defendant or defendants, or any of them, proves to be defective, such process may be completed by the United States court through its officers, or new process as to defendants upon whom process has not been completed may be issued out of such United States court, or service may be perfected in such court in the same manner as in cases which are originally filed in such United States court. Nothing in this section shall be construed to deprive any defendant upon whom process is so served after removal, of his right to move to remand the cause to the State court, the same as if process had been served upon him prior to such removal. (Apr. 16, 1920, c. 146, 41 Stat. 554.)

## Chapter 4.—DISTRICT COURTS; MISCELLANEOUS PROVISIONS

Sec.
101. Capital cases.
102. Offenses on the high seas.
103. Offenses begun in one district and completed in another.
104. Suits for penalties and forfeitures.
105. Suits for internal-revenue taxes.
106. Seizures made on high seas.
107. Capture of property used in insurrection.
108. Seizures under various circumstances.
109. Patent cases.
110. Proceedings to enjoin Comptroller of Currency.
111. When part of several defendants cannot be served.
112. Civil suits; arrests in; district where brought; effective period.
113. Suits in States containing more than one district.
114. Districts containing more than one division; transfer of criminal cases.
115. Suits of local nature.
116. Property in different districts in same State.
117. Property in different States in same circuit; jurisdiction of receiver.
118. Absent defendants in suits to enforce liens.
119. Transfer of civil causes to another division of district.
120. Change of venue from one division to another in Indiana. [Repealed.]
121. Creation of new district or division.
122. Creation of new district or transfer of territory; lien.
123. Commissioners; oaths to appraisers.
124. Management of property by receivers.
124a. State taxation; business conducted by receivers, trustees or other court officers subject to.
125. Suits against receiver.
126. Officers of courts.
127. Masters or receivers.

Section 101. (Judicial Code, section 40.) Capital cases. The trial of offenses punishable with death shall be had in the county where the offense was committed, where that can be done without great inconvenience. (R. S. § 729; Mar. 3, 1911, c. 231, § 40, 36 Stat. 1100.)

R. S. § 729 from Act Sept. 24, 1789, c. 20, § 29, 1 Stat. 88; Act July 16, 1862, c. 189, § 2, 12 Stat. 589.

§ 102. (Judicial Code, section 41.) Offenses on the high seas. The trial of all offenses committed upon the high seas, or elsewhere out of the jurisdiction of any particular State or district, shall be in the district where the offender is found, or into which he is first brought. (R. S. § 730; Mar. 3, 1911, c. 231, § 41, 36 Stat. 1100.)

R. S. § 730 from Act Apr. 30, 1790, c. 9, § 8, 1 Stat. 113; Act Apr. 20, 1818, c. 88, § 4, 3 Stat. 448; Act May 15, 1820, c. 113, §§ 3, 4, 5, 3 Stat. 600; Act Mar. 3, 1825, c. 65, §§ 5, 14, 4 Stat. 115, 118; Act Mar. 3, 1847, c. 51, 9 Stat. 175.

§ 103. (Judicial Code, section 42.) Offenses begun in one district and completed in another. When any offense against the United States is begun in one judicial district and completed in another, it shall be deemed to have been committed in either, and may be dealt with, inquired of, tried, determined, and punished in either district, in the same manner as if it had been actually and wholly committed therein. (R. S. § 731; Mar. 3, 1911, c. 231, § 42, 36 Stat. 1100.)

R. S. § 731 from Act Mar. 2, 1867, c. 169, 3 Stat. 484.

§ 104. (Judicial Code, section 43.) Suits for penalties and forfeitures. All pecuniary penalties and forfeitures may be sued for and recovered either in the district where they accrue or in the district where the offender is found. (R. S. § 732; Mar. 3, 1911, c. 231, § 43, 36 Stat. 1100.)

R. S. § 732 from Act Feb. 28, 1839, c. 36, § 3, 5 Stat. 322; Act June 30, 1864, c. 173, §§ 41, 179, 13 Stat. 239, 305; Act July 13, 1866, c. 184, § 9, 14 Stat. 111, 145.

§ 105. (Judicial Code, section 44.) Suits for internal revenue taxes. Taxes accruing under any law providing internal revenue may be sued for and recovered either in the district where the liability for such tax occurs or in the district where the delinquent resides. (R. S. § 733; Mar. 3, 1911, c. 231, § 44, 36 Stat. 1100.)

R. S. § 733 from Act July 13, 1866, c. 184, § 9, 14 Stat. 111.

§ 106. (Judicial Code, section 45.) Seizures made on high seas. Proceedings on seizures made on the high seas, for forfeiture under any law of the United States, may be prosecuted in any district into which the property so seized is brought and proceedings instituted. Proceedings on such seizures made within any district shall be prosecuted in the district where the seizure is made, except in cases where it is otherwise provided. (R. S. § 734; Mar. 3, 1911, c. 231, § 45, 36 Stat. 1100.)

R. S. § 734 from Act Sept. 24, 1789, c. 20, § 9, 1 Stat. 76; Act July 13, 1861, c. 3, §§ 4, 5, 9, 12 Stat. 256, 257, 258; Act Aug. 6, 1861, c. 60, § 2, 12 Stat. 319; Act June 30, 1864, c. 173, § 43, 13 Stat. 240; Act July 13, 1866, c. 184, § 9, 14 Stat. 111; Act Mar. 2, 1867, c. 169, § 25, 14 Stat. 483.